**UNITED STATES of America,
Plaintiff,**

**v.**

**Jesus A. VILLA, Defendant.**

**No. 00–40101–01–RDR.**

United States District Court,
D. Kansas.

Feb. 6, 2001.

Gregory G. Hough, Office of U.S. Atty., Topeka, KS, for U.S.

David J. Phillips, Office of Fed. Defender, Kansas City, KS, Ronald E. Wurtz, Office of Fed. Public Defender, Topeka, KS, for defendant.

## MEMORANDUM AND ORDER

ROGERS, District Judge.

Defendant is charged with one count of possessing with intent to distribute 500 grams or more of cocaine. This case is now before the court upon defendant's motion to suppress and defendant's motion for disclosures regarding expert testimony.

## MOTION TO SUPPRESS

This case arises from a traffic stop on Interstate 70 in Ellis County, Kansas. Defendant was driving a white Chevrolet that Kansas Highway Patrol troopers Rule and Schroeder observed following another vehicle, a Ford Taurus, too closely as the cars passed through a one-lane construction zone. The troopers also observed the Ford following another vehicle too closely. The cars were less than a second apart traveling about 60 miles per hour. Prior to pulling the cars over, the troopers, who were in a marked patrol car, drove along side defendant's car. This was done as a precaution for the officers' protection. The stop was recorded on video tape. According to the tape, the stop was initiated at 9:39 a.m. on August 25, 2000.

A woman and a child were passengers in defendant's car. Two men were in the Ford Taurus.

Trooper Rule approached defendant's car while Trooper Schroeder approached the Ford Taurus. In the first minute or two minutes of his conversation with defendant, Trooper Rule told defendant why he was stopped and asked for defendant's driver's license. He learned the car was rented and asked for the rental papers. During this same time period, Trooper Rule asked: where defendant was heading; why defendant was heading there ("vacationing?"); for how long; and twice asked whether defendant was traveling with the people in the Ford Taurus. Defendant denied that he was traveling with them. He said that he was traveling from Phoenix, Arizona to New Jersey to visit relatives.

At 9:41 a.m. Trooper Rule returned to his patrol car with the paperwork and identification defendant had given him. He had no difficulty communicating with defendant. Defendant and the woman in defendant's car seemed extremely nervous to Trooper Rule. He stated that defendant's hands were shaking and his voice was wavering. To Trooper Rule, defendant seemed more nervous than drivers on most traffic stops.

Trooper Schroeder returned to the patrol car about at 9:42 or 9:43 a.m. He and Trooper Rule shared the opinion that the two cars were involved in illegal activity, possibly hauling illegal contraband. Defendant's car was rented in Scottsdale, Arizona (near Phoenix) on August 23, 2000 to be returned on September 6, 2000. The Ford Taurus was rented on the same day in Phoenix as a one-way rental. Its passengers were also nervous and stated that they were returning from a vacation in Phoenix, having flown there from New York. The occupants of each car were Hispanic. The occupants of the two cars repeatedly denied traveling with each other. The troopers did not believe these denials. They believed that drugs would be found in defendant's car.

Although the troopers carried a drug dog in their car, they decided not to employ the dog at this juncture. Instead, they decided to ask for consent to search. Trooper Rule again approached defendant's car at 9:43 a.m. He returned defendant's paperwork and driver's license. He

explained to defendant that he was giving defendant a warning and told him to stay at least two seconds behind a vehicle in front of him. Trooper Rule then told defendant to have a good trip and moved back from the car. He heard defendant say something and then asked defendant what he said. Defendant said "thanks" and Trooper Rule again took a step away from the vehicle, but reversed his course and asked if he could ask defendant some questions. The time was 9:44 a.m. Defendant said "okay" and Trooper Rule proceeded to inquire as to whether defendant was carrying any guns or drugs in the car. Defendant said "no." Then Trooper Rule asked if he could search the trunk of the car. Defendant said "sure" and popped open the trunk. Trooper Rule asked defendant to step out of the car. Then, defendant was frisked momentarily and asked to move to the front of the vehicle. When Trooper Rule searched the trunk, he noticed there were only two small duffel bags inside. This made him suspect that the travel plans defendant told him were false. He thought larger bags would be needed for a long vacation. At 9:45 a.m., Trooper Rule asked defendant if he could look "up front" or inside the car. Defendant assented.[1] At 9:46 a.m. Trooper Rule asked if he could look under the hood. Again, the answer was affirmative. At 9:47 a.m. Trooper Rule helped search the Ford Taurus. Before doing so, he asked if defendant would mind waiting while he searched the other car. Defendant agreed to wait. At 9:52 a.m. Trooper Rule returned to search defendant's car. At 9:55 a.m. he found what is alleged to be cocaine in the door panel of the right-side passenger door.

1. Scope of the traffic stop

The first argument in the motion to suppress is that the questions of the officers exceeded the scope of the traffic stop. Defendant relies upon the recent case of *U.S. v. Holt*, 229 F.3d 931 (10th Cir.2000). In Holt, the Tenth Circuit held that during a traffic stop for failure to wear a seat belt, the police could not ask the defendant whether he was carrying any weapons in his vehicle. The question exceeded the scope of the investigative detention, which was simply to check out the seatbelt violation, because there were no reasonable grounds to suspect any other violation to which the weapons question was relevant.

Here, defendant contends there were questions regarding travel arrangements and whether he had weapons or drugs which were not reasonably related to the traffic violation of following too close. We shall discuss the guns and drugs question first.

This case is distinguishable from Holt in part because the question regarding whether there were drugs or guns in the car came after Trooper Rule had: handed back defendant's license and paperwork; told him to have a safe trip; asked if he could ask defendant some questions; and received consent to do so. This takes the drugs and guns question out of the purview of the Holt case where the question was posed during the investigative detention and without consent to be questioned. *United States v. Bustillos–Munoz*, 235 F.3d 505, 2000 WL 1842386 (10th Cir. Dec. 15, 2000) (footnote 3).

If defendant had not consented to the questioning, then the Holt rule would be controlling. But, we believe there was free and voluntary consent. Defendant

---

1. The videotape did not record the sound of defendant's voice in response to this request or some of the later requests. We credit the testimony of Trooper Rule that defendant orally or visually signaled his consent to the requests to search. This testimony is consistent with the actions shown on the videotape.

has asserted that there was a language barrier which may have vitiated his consent to questioning. We disagree. This traffic stop was handled expeditiously. We do not believe this would have been the case if there had been a significant language barrier. Defendant is intelligent and has nine years' experience living and working in the United States. On the tape of the traffic stop, defendant seemed to understand what was being asked and was able to respond intelligently to the questions and requests made by Trooper Rule.

The question or questions regarding travel plans came during the investigative detention and before defendant was free to leave. In Holt, the Tenth Circuit did not decide whether travel plans questions are permissible during a stop for a seat belt violation. The court noted that in three cases where such questions were purportedly approved by the Tenth Circuit, a direct ruling upon the propriety of such questions was unnecessary or unsupported with citation or analysis. 229 F.3d at 937 (discussing *United States v. Kopp*, 45 F.3d 1450, 1454 (10th Cir.1995); *United States v. McSwain*, 29 F.3d 558, 561 (10th Cir. 1994); and *United States v. Rivera*, 867 F.2d 1261, 1263 (10th Cir.1989)). See also, *U.S. v. Hernandez*, 93 F.3d 1493, 1499 (10th Cir.1996) (holding that travel plans questions "may be asked as a matter of course without exceeding the proper scope of a traffic stop").

In the instant case, the record is not clear as to why the travel plans questions were asked. It is clearly possible that the questions were part of the process for developing reasonable suspicion of criminal activity. The answers to the questions could help the officers determine whether the two cars were traveling together. If the cars were traveling together, it would be relevant to a drug courier investigation. The answers could also help the officers decide whether the cars were going from

and to locations known for drug activity and whether their luggage and other accoutrements were consistent with the stated travel plans. The answers which were given to Troopers Rule and Schroeder appeared to play a part in their deduction that defendant was a drug courier. See Exhibit 6 discussing "indicators" of drug activity displayed during the stop of defendant. Accordingly, it is not simple to distinguish the travel plans questions in this case from the guns and drugs questions in Holt. On the other hand, the questions seem to be relevant to investigating the traffic violation of following too close because they might suggest a rationale for following closely.

Upon review and reflection, the court finds that the travel plans questions do not require suppression of evidence for the following reasons. First, as discussed in Holt, there are Tenth Circuit cases which appear to approve such questions in this context. Second, the questions are conceivably related to the traffic offense for which defendant was stopped. Third, there is post-Holt precedent within the district for permitting these questions. See *U.S. v. Ward*, 2000 WL 1585627 (D.Kan. Oct. 16, 2000) (Judge Saffels); *U.S. v. Ramstad*, 2000 WL 1838297 (D.Kan. Dec. 12, 2000) (Judge Saffels).

■ Finally, even if there was a violation of the Fourth Amendment by asking the travel plans questions, we do not believe suppression is appropriate because the consent to the search which led to the discovery of the drug evidence was not tainted by the violation. As the Holt case discusses, three factors are considered when determining whether the voluntary nature of a consent is tainted by illegal detention: " 'the temporal proximity of the illegal detention and the consent, any intervening circumstances, and particularly, the purpose and flagrancy of the officer's

unlawful conduct.' " 229 F.3d at 941 (quoting *United States v. Walker*, 933 F.2d 812, 818 (10th Cir.1991)).

In this instance, the travel plans questions were somewhat close in time to the consent to search the car. But, the questions were so short that they did not extend the length of the legitimate investigative detention by any quantifiable degree. It was going to take some time to check defendant's license and registration and to complete a warning citation regardless of what questions were asked. Looking at the second factor, we believe there was an intervening circumstance. Trooper Rule returned defendant's paperwork and license, bid him well, and stepped back from the car before asking defendant if he could ask some questions and asking defendant if he could search the car. Under these circumstances, defendant's consent to questioning and consent to search should not be considered coerced; certainly not coerced by the questions about travel plans made minutes earlier. Lastly, as noted previously, the questions about travel plans are arguably related to the traffic violation observed here. Moreover, comparable questions have been approved in the Tenth Circuit and other jurisdictions. E.g., *United States v. Shabazz*, 993 F.2d 431 (5th Cir.1993) (questions about recent whereabouts during a stop for speeding); *United States v. Palomino*, 100 F.3d 446, 449–50 (6th Cir.1996) (questions about contraband while issuing a citation); *United States v. Purcell*, 236 F.3d 1274, 2001 WL 10392 (11th Cir.2001) (questions about prior arrests and drugs and gun possession during a stop for following too closely). Therefore, the court cannot characterize the violations, if they were violations, as "flagrantly" unlawful. Nor can the court conclude that they coerced or were intended to coerce defendant's consent to a request to search the car. See *Hernandez*, 93 F.3d at 1499 ("[a] limited number of routine questions about travel plans and

relationship to passengers, followed by a question about possession of contraband and a request to search, are not sufficient to render an otherwise consensual encounter coercive.").

One could argue that the questions developed information which led the officers to ask for consent to search the car. But, given the defendant's extreme nervousness, the nervousness of the other passengers in the two cars, the information regarding travel plans contained in the rental papers, and the information obtained from the driver's license and license plates, we believe the troopers would have asked for consent to search regardless of whether they had asked about travel plans during the traffic stop.

For all of these reasons, we reject the defendant's Holt argument for suppression.

### 2. Consent

■ Defendant contends that he did not consent to the search or to be questioned. We reject this argument. The government has the burden of proving that consent was given freely and voluntarily. *U.S. v. McKneely*, 6 F.3d 1447, 1453 (10th Cir.1993).

[F]or evidence obtained pursuant to a consent search to be admissible, the government must: (a) present "clear and positive testimony that consent was unequivocal and specific and freely given"; and (b) "prove consent was given without duress or coercion, express or implied." *United States v. Butler*, 966 F.2d 559, 562 (10th Cir.1992) (citation omitted).

As a general rule, ... consent [is considered] voluntary where there is no evidence of coercion and the testimony establishes consent was freely given. See, e.g., *United States v. Espinosa*, 782 F.2d 888, 892 (10th Cir.1986) (consent upheld where "[n]o threat, promise or force was

used to obtain the consent" and defendant watched officer search vehicle without objecting) . . .

*Id.* In this case, the testimony of Trooper Rule and the videotape of the stop provides clear and positive proof that defendant unequivocally and voluntarily consented to the search in this case. There is no evidence of duress or coercion. There was no display of a weapon or physical touching or commanding voice which might indicate compulsion. More than one officer was involved, but only one officer was in close proximity to defendant when defendant was asked to consent to questioning or to the searches. Defendant's license and paperwork had been returned when he gave consent in this case. This, together with the words "have a good trip," were sufficient to convey the message that he was no longer detained. See *Ohio v. Robinette,* 519 U.S. 33, 39–40, 117 S.Ct. 417, 136 L.Ed.2d 347 (1996) (rejecting per-se rule that detention cannot become consensual until detainee is told he is free to leave); *U.S. v. Anderson,* 114 F.3d 1059, 1064 (10th Cir.1997) (after paperwork and license are returned a driver is illegally detained "only if the driver had objectively reasonable cause to believe that he or she is not free to leave"); see also, *U.S. v. Elliott,* 107 F.3d 810, 814 (10th Cir.1997).

Our view of the videotape indicates that the troopers performed professionally and without the use of force or coercion. Defendant testified before the court with the aid of an interpreter. But, as mentioned previously, he appears to be an intelligent adult who has lived and worked in the United States for nine years. He professes that he understands little English. But, we believe this is overstated. Defendant testified that he has been stopped before and has had his car searched four or five times. There is no indication from the videotape or from this history that defen-

dant intended to decline the trooper's request to ask questions or to search his car.

Accordingly, we reject defendant's argument that he did not consent to the prolonged detention or the multiple searches of his car after he was given a citation and received back his driver's license and paperwork.

### 3. Ethnic profiling

■ Defendant contends that the scope of his investigative detention was broadened because of his ethnic background. Defendant has offered no proof for this contention. Nor do we believe that this equal protection argument offers legal grounds for suppressing evidence under the Fourth Amendment. See *Whren v. United States,* 517 U.S. 806, 116 S.Ct. 1769, 135 L.Ed.2d 89 (1996). Defendant's reference to *City of Indianapolis v. Edmond,* 531 U.S. 32, 121 S.Ct. 447, 148 L.Ed.2d 333 (2000) is not persuasive because that case concerned a challenge to a drug interdiction checkpoint under the Fourth Amendment. Here, defendant does not dispute the reasonable cause for the stop, and the court has found that there was a legal consent to the scope of the search. In sum, there is no persuasive factual or legal basis to order suppression on the defendant's claim of ethnic profiling.

### Conclusion

For the above-stated reasons, defendant's motion to suppress shall be denied.

## MOTION TO DISCLOSE EXPERT TESTIMONY

At the close of the hearing on this matter, the dispute over this motion appeared limited to whether the government has complied with its obligations under Rule 16(a)(1)(E) with regard to expert testimony which might be presented by Trooper Rule. The court has reviewed the "sum-

mary" provided by the government to the defense. This appears adequate to the court. But, if the government intends to ask Trooper Rule to give an expert opinion regarding matters which are not contained on the summary (which appears more concerned with search and seizure issues than trial issues), then the summary should be supplemented. With this condition and given the other disclosures made or promised by the government, the court finds this motion moot.

## SUMMARY

Defendant's motion to suppress is denied. Defendant's motion for disclosure of expert testimony shall be considered moot consistent with the discussion contained in this memorandum and order.

**IT IS SO ORDERED.**