**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**APR 6 2004**

**PATRICK FISHER**
**Clerk**

PUBLISH

UNITED STATES COURT OF APPEALS

TENTH CIRCUIT

---

UNITED STATES OF AMERICA,

Plaintiff-Appellant,

v.

ARTHUR ALVIN OLIVER,

Defendant-Appellee.

No. 02-4187

---

APPEAL FROM THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF UTAH
(D.C. NO. 2:01-CR-691-B)

---

Michael S. Lee, Assistant United States Attorney (Paul M. Warner, United States Attorney, and Diana Hagen, Assistant United States Attorney, on the briefs), Salt Lake City, Utah, for Plaintiff-Appellant.

Michael R. Sikora (Loni F. DeLand, with him on the brief), Salt Lake City, Utah, for Defendant-Appellee.

---

Before **LUCERO** , **HARTZ** , and **McCONNELL** , Circuit Judges.

---

**HARTZ** , Circuit Judge.

The government appeals the district court's grant of Defendant Arthur Alvin Oliver's motion to suppress evidence seized during a traffic stop. We exercise jurisdiction under 18 U.S.C. § 3731 and reverse.

## I. BACKGROUND

On the afternoon of October 13, 2001, Sergeant Ryan Bauer of the Utah Highway Patrol was patrolling Interstate 15 in Beaver County, Utah, when he observed a blue Ford driven by Defendant exceeding the speed limit. He turned on his emergency lights and pulled the car over for speeding. The activation of the lights triggered the police vehicle's audio/video equipment, which recorded the traffic stop and subsequent events, although the audio component of the equipment failed to engage until later in the stop.

Defendant was the car's sole occupant. Sergeant Bauer approached from the passenger side, informed Defendant why he had been stopped, and asked for his license and registration. Defendant produced a driver's license and explained that the car was rented. When Bauer asked to see the rental agreement, Defendant opened the glove box to retrieve it.

Bauer saw in the glove box a cylindrical package approximately six inches long, wrapped in brown paper with thin, partially clear tape. Bauer, a 10-year veteran of the Highway Patrol who had been involved in approximately 400 drug-interdiction cases in the previous six years, testified that based on his training and

experience the packaging appeared consistent with the way drugs are transported on interstate highways. He stated that he had "never seen anything wrapped like that that was not drugs wrapped in masking tape." Aplt.'s App. at 100.

Defendant could see that Bauer had noticed the package. He appeared to push the package farther into the glove box and underneath some papers. Bauer then asked Defendant what was in the package. Defendant did not answer, but his demeanor "completely changed." He began shaking and turned pale. He again tried to push the package down into the glove box. Asked once more what the package was, Defendant paused for a few seconds and replied that it was "fruit."

Bauer twice asked to see the package. Defendant did not reply. Instead, he took the package from the glove box, clutched it to his chest, covered it with his hands, and stared straight ahead. He ignored Bauer's repeated directions to drop the package, shut off the engine, and leave the vehicle. Bauer testified that he began to fear for his safety and drew his firearm. Eventually, Defendant put the package on the passenger's seat and left the car. By this time the traffic stop had lasted about two-and-a-half minutes.

Once Defendant was outside, Bauer instructed him to go to the front of the vehicle, turn around, kneel down, and put his hands behind his head. Defendant complied. Bauer then called for backup, intending to keep Defendant in that

position until more officers arrived. (At this point the audio portion of the police recording engaged.)

While Defendant was kneeling, he appeared to Bauer to be extremely nervous and agitated. Defendant repeatedly lowered his hands from his head and moved them towards his waistband, despite Bauer's numerous orders not to move. After about six minutes in that position, Defendant stood up, approached the officer, told him that he would not get back on the ground, and that Bauer "was just going to have to shoot and kill him." Aplt.'s App. at 91. Defendant said, "I am just going to walk away," *id.* at 92, and began doing so. Bauer used pepper spray in an attempt to stop Defendant. But after being sprayed twice, Defendant ran across the highway to the median. Backup officers then arrived and arrested Defendant in the median. Following the arrest, Bauer can be heard on the audio/video recording remarking to a fellow officer, "I don't know what the package is."

Defendant, his car, and the package were transported to the Beaver County Sheriff's Office. At the station the package was subjected to a sniff test by a drug-detection dog, who alerted to the presence of drugs. Without first obtaining a search warrant, Bauer opened one end of the package and performed a field test on its contents. The test indicated that the package contained methamphetamine.

Defendant was indicted for possession of 50 grams or more of a mixture or substance containing methamphetamine, in violation of 21 U.S.C. § 841(a)(1), and for using or carrying a firearm in relation to a drug trafficking crime, in violation of 18 U.S.C. § 924(c). (The record on appeal does not indicate how, when, or where the firearm was found.) He moved to suppress the methamphetamine discovered during the traffic stop, arguing that Bauer lacked reasonable suspicion to inquire about the package in the glove box. (He also argued that by drawing his firearm and ordering Defendant out of the car and onto the ground, Bauer effectively arrested him without probable cause, but he does not press that argument on appeal.) Following a hearing at which only Bauer testified, the magistrate judge recommended that Defendant's motion be granted because the package "was not obviously contraband," Aplt.'s App. at 45; Bauer lacked reasonable suspicion to ask about its contents (the magistrate judge discounted the officer's alleged experience with such packages because "the particulars of the experience were not identified or equated to the facts of this stop," Aplt.'s App. at 52); and Defendant's reaction to Bauer's questioning was therefore fruit of an illegal inquiry. The magistrate judge also found that Bauer had unlawfully opened the package at the police station without a warrant. The district court adopted the magistrate judge's Report and Recommendation in its entirety and granted Defendant's motion to suppress. The government appeals.

-5-

## II.  DISCUSSION

"In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and accept the district court's findings of fact unless they are clearly erroneous." *United States v. Massie*, 65 F.3d 843, 847 (10th Cir. 1995).  "The ultimate question of whether a search and seizure was reasonable under the Fourth Amendment is a question of law that we review de novo."  *Id.* (internal quotation marks omitted).  We address in turn the district court's rulings that the officer violated the Fourth Amendment by (1) questioning Defendant about the package during the traffic stop and (2) opening the package at the police station without a warrant.

### A.  Questioning during the traffic stop

Defendant's sole argument with respect to his detention during the traffic stop is that Sergeant Bauer's questions regarding the package in the glove box violated the Fourth Amendment.  He contends that all the officer's observations following those questions, along with the drugs seized from the car, resulted from this unlawful inquiry and therefore must be suppressed as "fruit of the poisonous tree."  *Wong Sun v. United States,* 371 U.S. 471, 487-88 (1963).  He does not challenge the initial stop or Bauer's ordering him out of the car and requiring him to kneel at the side of the road until backup officers arrived.  We are thus

confronted with the narrow issue of whether Bauer's questions about the package—asked after he observed both the package and Defendant's apparent attempts to push it under the papers in the glove box—violated the Fourth Amendment's prohibition against "unreasonable searches and seizures." U.S. Const. amend. IV. We conclude that they did not.

"A traffic stop is a 'seizure' within the meaning of the Fourth Amendment, 'even though the purpose of the stop is limited and the resulting detention quite brief.'" *United States v. Williams*, 271 F.3d 1262, 1266 (10th Cir. 2001) (quoting *Delaware v. Prouse,* 440 U.S. 648, 653 (1979)). The "touchstone" of Fourth Amendment analysis "is always the reasonableness in all the circumstances of the particular governmental invasion of a citizen's personal security." *Pennsylvania v. Mimms,* 434 U.S. 106, 108-09 (1977) (per curiam) (internal quotation marks omitted). "Reasonableness, of course, depends on a balance between the public interest and the individual's right to personal security free from arbitrary interference by law officers," *id.* at 109 (internal quotation marks omitted), and "is measured in objective terms by examining the totality of the circumstances." *Ohio v. Robinette*, 519 U.S. 33, 39 (1996). We analyze the reasonableness of a traffic stop under the principles relating to investigative detentions set forth in *Terry v. Ohio,* 392 U.S. 1 (1968). *See United States v. Holt*, 264 F.3d 1215, 1228 (10th Cir. 2001) (en banc).

At the outset we must distinguish between questioning that prolongs the detention and questioning that does not. When questioning prolongs the detention, the prolongation in itself constitutes a seizure under the Fourth Amendment, so we have repeatedly held that the questioning must be supported by at least reasonable suspicion. *See, e.g., United States v. Sandoval*, 29 F.3d 537, 542-43 (10th Cir. 1994) (questioning about contraband that prolonged detention unreasonable because unsupported by reasonable suspicion of criminal activity); *United States v. Walker*, 933 F.2d 812, 816 & n.2 (10th Cir. 1991) (same).

As for questions that do not extend the duration of the stop, panels of this circuit have mentioned the matter in dictum on two occasions. In *Walker* we held that the defendant had been unconstitutionally detained for questioning during a traffic stop. We added, however:

> [O]ur determination that the defendant was unlawfully detained might be different if the questioning by the officer did not delay the stop beyond the measure of time necessary to issue a citation. For example, *this case would be changed significantly* if the officer asked the same questions while awaiting the results of an NCIC license or registration inquiry.

*Id.* (emphasis added).

In the second case, *United States v. Jones*, 44 F.3d 860 (10th Cir. 1995), we considered police questioning about narcotics during a traffic stop. The questioning occurred while the officer was awaiting word from his dispatcher

-8-

regarding whether the driver's license had been suspended.  We upheld the police

conduct as justified by reasonable suspicion.  We stated, without any reference to

*Walker* and in apparent disagreement with what had been said in that opinion:

> Once the driver produces a valid license and proof that she is entitled
> to operate the car, the driver must be permitted to proceed.
> Subsequent or *concurrent* detentions for questioning are justified
> only when the officer has reasonable suspicion of illegal transactions
> in drugs or of any other serious crime.

*Id.* at 872 (internal quotation marks and citation omitted; emphasis added).

The matter received some clarification in our en banc opinion in *Holt*, 264

F.3d 1215.  The government had argued, relying on the Fifth Circuit's decision in

*United States v. Shabazz*, 993 F.2d 431, 436-38 (5th Cir. 1993), that "during a

traffic stop based on probable cause, *length* is the only constraint on questioning,"

*id.* at 1228 (emphasis added).  We rejected this notion, agreeing with the Seventh

Circuit's panel decision in *United States v. Childs*, 256 F.3d 559 (7th Cir. 2001),

*see Holt*, 264 F.3d 1229 n.4, a decision that was subsequently set aside by the

Seventh Circuit en banc, *see United States v. Childs*, 277 F.3d 947, 949 (7th Cir.

2002) ("Questions asked during detention may affect the reasonableness of that

detention (which *is* a seizure) to the extent that they prolong custody, but

questions that do not increase the length of detention (or that extend it by only a

brief time) do not make the custody itself unreasonable or require suppression of

evidence found as a result of the answers.").  In *Holt* we emphasized that

reasonableness is the overarching inquiry in Fourth Amendment analysis, *see Holt*, 264 F.3d at 1220, and we held that the "Fourth Amendment reasonableness of a traffic stop . . . must be judged by examining both the length of the detention and the manner in which it is carried out." *Id.* at 1230.

The *Holt* court did not expand upon the standard for determining the propriety of questions that do not prolong the detention. But when it said that the "reasonableness of a traffic stop . . . must be judged [in part] by the manner in which [the detention] is carried out," it implied that the test, not surprisingly, is reasonableness. In other words, we must ask whether the circumstances made it reasonable for the officer to ask the questions, even when the questioning did not prolong the detention.

As we understand *Holt*, a question may be "reasonable" despite the absence of the particularized evidence of crime required for "reasonable suspicion." After all, *Holt* allows the officer routinely to ask about travel plans and the presence of loaded firearms during a lawful traffic stop. *Id.* at 1217-18, 1221. In addition, we see nothing in *Holt* to suggest that the only circumstances relevant to reasonableness are those known to the officer at the outset of the stop, to the exclusion of what is learned during the course of the stop.

*Holt*, as we read it, is consistent with Fourth Amendment principles. The "reasonable suspicion" standard governs whether a seizure, or the continuation of

a seizure, is constitutional. Protection against seizures is at the core of the Fourth Amendment, whose office is to protect "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. In contrast, protection against rude, officious, or intrusive police questioning is not a core concern of that Amendment. Questioning in itself does not constitute a search or seizure. *See Florida v. Bostick*, 501 U.S. 429, 434 (1991). Moreover, although a person detained on reasonable suspicion is not free to leave, a person questioned by an officer is free to refuse to answer the question, *see Holt*, 264 F.3d at 1224. Thus, it makes sense to treat non-detaining questioning differently than we treat actual seizures. As recognized in *Walker*, our analysis may "be changed significantly" depending upon whether we are reviewing questions that prolonged the detention or questions that did not. 933 F.2d at 816 n.2.

In our view, Bauer's questions regarding the contents of the package were reasonable. They were prompted by and directly related to Defendant's objectively suspicious behavior: After the package caught the officer's attention, Defendant apparently responded by attempting to push it farther into the glove box and underneath the paperwork inside. At that point all Bauer asked was what was in the package.

When we say that Bauer's questions were reasonable in light of the circumstances, we could perhaps say that we are applying the "reasonable suspicion" standard. But we do not wish to dilute the meaning of that standard. The district court in this case believed that the evidence available to Bauer did not rise to the level of "reasonable suspicion," as the term is generally understood. As we have explained, however, a less-confined reasonableness standard is appropriate in this context. And we hold that this overarching reasonableness standard is met here.

Accordingly, we reject Defendant's contention that Sergeant Bauer's questions regarding the package violated the Fourth Amendment.

B. <u>Search of the package at the police station</u>

Having determined that the questioning during the traffic stop was not unreasonable (and therefore did not taint all subsequent events), we now turn to the district court's alternative ruling that Sergeant Bauer violated the Fourth Amendment when he opened the package at the police station later that same day without a search warrant. The government concedes that opening the package to test it for drugs was a "search" under the Fourth Amendment for which a warrant ordinarily would be required. *Cf. United States v. Lopez*, 777 F.2d 543, 550 (10th Cir. 1985) (absent an exception to the warrant requirement, "warrantless searches

are *per se* unreasonable under the Fourth Amendment"). It argues, however, that the automobile exception to the warrant requirement applies here. We agree.

Under the automobile exception, "police officers who have probable cause to believe there is contraband inside an automobile that has been stopped on the road may search it without obtaining a warrant." *Florida v. Meyers,* 466 U.S. 380, 381 (1984) (per curiam). Moreover, if there is probable cause to believe that a container in a lawfully stopped vehicle contains contraband, the police may search the container without a warrant. *See California v. Acevedo*, 500 U.S. 565, 580 (1991). Furthermore, "the justification to conduct such a warrantless search does not vanish once the car has been immobilized," *Michigan v. Thomas,* 458 U.S. 259, 261 (1982) (per curiam), and "[t]here is no requirement that the warrantless search of a vehicle occur contemporaneously with its lawful seizure." *United States v. Johns*, 469 U.S. 478, 484 (1985); *see Texas v. White*, 423 U.S. 67, 68 (1975) ("police officers with probable cause to search an automobile at the scene where it was stopped could constitutionally do so later at the station house without first obtaining a warrant"). Accordingly, a container in a vehicle may be searched without a warrant within a reasonable time after its removal from the vehicle. *See Johns*, 469 U.S. at 480 (approving "a warrantless search of packages several days after they were removed from vehicles that police officers had probable cause to believe contained contraband"); *United States v. Corral*, 970

F.2d 719, 726 (10th Cir. 1992) (because police had probable cause to believe that package in automobile contained contraband, automobile exception permitted package's warrantless seizure and subsequent search at police station). Thus, if there was probable cause to believe Defendant's package contained contraband at the time it was seized from his vehicle, no warrant was necessary for the later search.

Here, there was probable cause to believe that the package in the vehicle contained contraband. Although Defendant makes a perfunctory assertion, with only the suggestion of an argument, that probable cause was absent, his bizarre conduct—culminating in his flight from the scene—after being asked about the package established "a fair probability that the car contain[ed] contraband or evidence." *United States v. Vasquez-Castillo*, 258 F.3d 1207, 1212 (10th Cir. 2001) (internal quotation marks omitted); *cf. United States v. Bell*, 892 F.2d 959, 967 (10th Cir. 1989) (suspicion that defendant was transporting drugs blossomed into probable cause when he fled from police detention). Accordingly, we hold that Sergeant Bauer did not violate the Fourth Amendment when he opened the package at the police station without a warrant.

III. **CONCLUSION**

We REVERSE the district court's grant of Defendant's motion to suppress and REMAND for further proceedings consistent with this opinion.

No. 02-4187, United States v. Oliver

**LUCERO** , J., concurring.

I join the concurrence of Judge McConnell insofar as its analysis is predicated on reasonable suspicion. Expressly, I do not join Judge Hartz's analysis that is based on a generalized "reasonableness" standard; such a standard is contrary to the established en banc precedent of this court. United States v. Holt, 264 F.3d 1215, 1230 (10th Cir. 2001) (applying Terry v. Ohio , 392 U.S. 1 (1968) to the issue of whether questions in the course of a traffic stop violate the Fourth Amendment).

No. 02-4187, United States v. Oliver

**McCONNELL** , J., concurring.

I join Judge Hartz's opinion, but wish to add that I consider it far from clear that Sergeant Bauer lacked "reasonable suspicion" to question Mr. Oliver about the contents of the unusual package in his glove compartment. The package was about six inches long, cylindrical, wrapped in brown paper with tape. The police officer, a 10-year veteran of the Highway Patrol who had been involved in approximately 400 drug-interdiction cases, testified that based on his training and experience the packaging appeared consistent with the way drugs are transported on interstate highways. He stated that he had "never seen anything wrapped like that that was not drugs wrapped in masking tape." Aplt's App. 100. Add to this Mr. Oliver's clumsy attempt to hide the package from the police officer, which together with the unusual appearance of the package could reasonably have incited suspicion. It is therefore arguably not necessary to debate precisely what standard we must apply to questions beyond the scope of the initial traffic stop – reasonableness or reasonable suspicion – because even the more demanding standard is satisfied under these facts.

In concluding there was no basis for reasonable suspicion, the Magistrate Judge found that the package was "not obviously contraband." Aplt's App. 45. But a package does not have to be "obviously" contraband to give rise to

reasonable suspicion.  Indeed, if it were "obviously contraband," it would constitute probable cause for search and arrest – not just a basis for asking a few more questions.  Moreover, the defendant's attempt to hide the package heightened the officer's suspicions.  Thus, I do not think a legal conclusion that Sergeant Bauer had a basis for reasonable suspicion is inconsistent with the factual finding.