**F I L E D**
**United States Court of Appeals**
**Tenth Circuit**

**NOV 15 2004**

**PATRICK FISHER**
**Clerk**

**UNITED STATES COURT OF APPEALS**

**TENTH CIRCUIT**

---

UNITED STATES OF AMERICA,

Plaintiff - Appellee,

v.

RAYMOND ARTHUR MALOUFF,

Defendant - Appellant.

No. 04-2032
(D. Ct. No. CR-03-1221-JC)
(D. N. Mex.)

---

**ORDER AND JUDGMENT**[*]

---

Before **TACHA**, Chief Circuit Judge, **HOLLOWAY**, and **LUCERO**, Circuit Judges.

---

Defendant-Appellant Raymond Arthur Malouff pleaded guilty to one count of possessing methamphetamine in violation of 21 U.S.C. §§ 841(a)(1) and (b)(1)(B). Contending that the traffic stop and questioning that led to the discovery of the narcotics violated his Fourth Amendment rights, Mr. Malouff filed a motion to suppress, which the District Court denied. We take jurisdiction under 28 U.S.C. § 1291 and AFFIRM.

---

[*]This order and judgment is not binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. This court generally disfavors the citation of orders and judgments; nevertheless, an order and judgment may be cited under the terms and conditions of 10th Cir. R. 36.3.

# I. BACKGROUND

On January 31, 2003, Mr. Malouff's Chevrolet Blazer was parked with its hood up in the parking lot of a convenience store in Farmington, New Mexico. Due to a recent string of robberies in this high crime area, Officers Hooper and Briseno were observing the convenience store from a half-block away in an undercover car. Based upon tips from a confidential source, Officer Hooper knew this parking lot to be a location where narcotics were often sold.

Mr. Malouff's Blazer was parked next to two other vehicles and several men were standing around. Although none of the men entered the convenience store, they remained in the parking lot for approximately thirty minutes. Eventually, a small silver car pulled into the parking lot and a passenger got out. This passenger walked up to the men standing next to the Blazer, talked with them briefly, and returned to the silver car. Immediately thereafter, all four vehicles left the parking lot. Officer Hooper, believing that a drug transaction occurred, instructed other patrol officers to follow the cars and "to develop probable cause to stop the vehicle[s]." Officers Hooper and Briseno followed the Blazer driven by Mr. Malouff.

Officers Hooper and Briseno followed Mr. Malouff's Blazer north on Miller Street. The officers had been following the Blazer for approximately one mile when it reached the intersection of Miller and Pinion Streets. Miller Street

has a single lane of traffic going in each direction with a stoplight and left-turn lane at the intersection with Pinion Street. Miller Street also has a wide safety lane on the right-hand side that narrows upon reaching the intersection with Pinion Street. Thus, to continue traveling north, a car must veer slightly to the right in order to stay out of the left-turn lane.

The Blazer approached the intersection while the traffic light was red. As the Blazer slowed, it veered to the right to avoid entering the left-turn lane. The Blazer, however, crossed over the white line separating the left-turn lane from the lane traveling north. Mr. Malouff failed to signal this lane change. Officer Hooper found this to be a violation of N.M. Stat. Ann. § 66-7-325(A), which prohibits turning without signaling when the turn may affect other traffic.

Following this lane change, the officers pulled Mr. Malouff over. When they approached the car, Mr. Malouff was exceptionally nervous. His hands were shaking violently, he could not pass his insurance information over to the officer even though he held the insurance card in his hand, and he continually exclaimed "oh my God." The officers asked Mr. Malouff to exit his vehicle and took him to the patrol car.

While writing the citation for the lane change violation, the officers questioned Mr. Malouff about the incidents at the convenience store. Mr. Malouff replied that he had a "major oil blowout" and that he was adding oil to

his vehicle. The officers asked Mr. Malouff to identify the man in the silver car, which he did.

During this questioning, Mr. Malouff remained extremely nervous. Although the officers asked him to refrain, Mr. Malouff incessantly placed his hands in his pockets. At this point, Officer Hooper asked Mr. Malouff if he had any weapons. After replying that he had a knife in his pocket, Mr. Malouff started to reach for his pocket. The officers restrained him and again asked what was in his pockets. Mr. Malouff said that he had $2000 in cash. Officer Hooper retrieved the cash and continued to search the pants pocket until he located the knife. Then the officers began searching the insides of Mr. Malouff's other pant and coat pockets. Finally, Mr. Malouff produced a small flashlight that contained a hypodermic needle and said "Oh God. I'm going to jail for paraphernalia."

Now suspecting that the car contained drugs, the officers asked Mr. Malouff if he had drugs in the car. When Mr. Malouff replied that he did not, the officers asked for permission to search the vehicle. In response, Mr. Malouff said that if they searched the car, they would find narcotics in the console. The officers then asked if they could remove the drugs from the console. Mr. Malouff agreed. The officers found methamphetamine, needles, and scales. The entire stop took under ten minutes.

The Government indicted Mr. Malouff for violating     21 U.S.C. §§ 841(a)(1)

and (b)(1)(B). Mr. Malouff then filed a motion to suppress all the evidence seized from him during the traffic stop, arguing that the stop violated his Fourth Amendment rights. After briefing and a thorough hearing, the District Court denied the motion. Mr. Malouff then pleaded guilty, reserving his right to appeal the District Court's denial of his motion to suppress. He filed a timely notice of appeal.

## II. DISCUSSION

On appeal, Mr. Malouff presents five arguments. First, he contends that the traffic stop was a pretext and therefore unreasonable under the Fourth Amendment. Second, Mr. Malouff argues that as a factual matter he did not violate N.M. Stat. Ann. § 66-7-325(A), rendering the traffic stop unreasonable. Third, he argues that the scope of his detention exceeds the grounds justifying the initial stop. Fourth, he claims that Officer Hooper's search for weapons exceeds the scope of a lawful patdown. Fifth, Mr. Malouff asserts that his consent to the search of his vehicle was involuntarily given. As we explain below, we disagree.

A. Standard of Review

When reviewing a district court's ruling on a suppression motion, "we accept the district court's factual findings absent clear error and review de novo the district court's determination of reasonableness under the Fourth Amendment." *United States v. Olguin-Rivera*, 168 F.3d 1203, 1204 (10th Cir.

- 5 -

1999).

B.    Pretext

Mr. Malouff first argues that the traffic stop for failing to signal a lane change was unreasonable under the Fourth Amendment because it was merely a pretext for questioning him about events at the convenience store. Mr. Malouff claims that Officer Hooper was trying "to develop probable cause to stop" him because the officer lacked a reasonable and articulable suspicion to detain him based upon the activities in the convenience store parking lot.

Mr. Malouff's argument is foreclosed by clearly established Supreme Court precedent. An officer's subjective motivation is irrelevant when considering the objective reasonableness of a traffic stop under the Fourth Amendment. *Whren v. United States*, 517 U.S. 806, 813 (1996); *United States v. Cervine*, 347 F.3d 865, 870 (10th Cir. 2003).

C.    The Initial Stop

Next, Mr. Malouff contends that the stop for violating      N.M. Stat. Ann. § 66-7-325(A) was constitutionally unreasonable.      In reviewing the constitutionality of traffic stops under the Fourth Amendment, we conduct a two-step inquiry. First, we determine whether the officer's stop was justified at its inception. *Cervine*, 347 F.3d at 868. Second, we consider whether the action was reasonably related in scope to the circumstances that first justified the stop.

*Id*.

A traffic stop is justified at its inception if the detaining officer had an objectively reasonable and articulable suspicion that a traffic violation occurred before stopping the automobile. *Id*. at 869. Here, the Government argues that Officer Hooper had an objectively reasonable and articulable suspicion that Mr. Malouff violated § 66-7-325(A), which provides: "No person shall so turn any vehicle without giving an appropriate signal in the manner hereinafter provided in the event any other traffic may be affected by such movement." The District Court found, as a matter of fact, that Officer Hooper's patrol car was "affected by" Mr. Malouff's movement.

Mr. Malouff contends that the District Court's factual finding was in error. We review the District Court's finding for clear error and reverse "only if the district court's finding was without factual support in the record or we are left with the definite and firm conviction that a mistake has been made." *United States v. Cernobyl*, 255 F.3d 1215, 1221 (10th Cir. 2001) (internal quotation omitted). Mr. Malouff argues that the District Court has committed a clear error because its factual finding is unsupported by any record evidence. Officer Hooper's testimony, however, supports the District Court's determination that his patrol car was affected by the lack of a signal. Therefore, the District Court's determination is supported by the record. Because we are not left with the

definite and firm conviction that a mistake was made, the District Court's finding was not clearly erroneous.

D.      Scope of the Detention

Mr. Malouff also argues that the officers' actions after the stop were not reasonably related to the violation that justified the stop at its inception. Generally speaking, "[a]n officer conducting a routine traffic stop may request a driver's license and vehicle registration, run a computer check, and issue a citation." *Cervine*, 347 F.3d at 868 (internal quotation omitted). After completion of these activities, an officer may continue to detain a driver "for reasons unrelated to the initial traffic stop if (1) the officer has an objectively reasonable and articulable suspicion that illegal activity has occurred or is occurring, or (2) if the initial detention has become a consensual encounter." *Id.* at 868-69 (quotations omitted).

The Government cites, and Mr. Malouff does not distinguish, *United States v. Oliver*, 363 F.3d 1061, 1067-68 (10th Cir. 2004). *Oliver* holds, as a corollary to our general rule, that an officer may question a traffic-stop detainee on any topic without reasonable and articulable suspicion so long as the questioning does not prolong the stop. *Id.* We further held that "a less-confined reasonableness standard is appropriate in this context." *Id.* at 1068.

Here, while the officers were writing the citation and running the computer

check, they asked Mr. Malouff about the events at the convenience store. The entire stop took approximately eight to ten minutes. This is well within a reasonable amount of time to write a citation and run a computer check. Moreover, Mr. Malouff does not contend that the questioning increased the amount of time he was detained. As such, *Oliver* controls this issue. Furthermore, given Mr. Malouff's suspicious conduct at the convenience store, the officers' questioning satisfies the "overarching reasonableness standard" set forth in *Oliver*. *See id.*

E.      The Frisk

Mr. Malouff next argues that the officers frisked him illegally because they reached into the pocket to get the knife instead of merely patting him down. Mr. Malouff, however, first told the officers that he had a knife in his pocket and then he reached for his pocket. Only then did the officers restrain Mr. Malouff and reach into his pocket.

Our Circuit has long recognized that, when conducting a *Terry* stop, an officer who reasonably believes that a detainee is armed and could gain immediate control of a weapon may search for the weapon and separate the detainee from any weapon that is found. *United States v. King*, 990 F.2d 1552, 1561 (10th Cir. 1993). Mr. Malouff's statement that he had a knife coupled with his reach to his pocket gave the officers an objective basis to believe he was

armed and dangerous; thus, the search of his pockets was justified. *Id*. ("The governmental interest in the safety of police officers outweighs the individual's Fourth Amendment interest when an officer has an objective basis to believe that the person being lawfully detained is armed and dangerous."). While a search normally involves a patdown prior to reaching into a detainee's pocket, here Mr. Malouff told the officers he had a knife and reached for it. On these facts, it was reasonable for the officers to immediately secure the knife for their own protection and, therefore, not a violation of the Fourth Amendment. *Id*.

F.     Consent to Search the Blazer

Finally, Mr. Malouff argues that his consent to search the Blazer was involuntary because he was seized when it was given. The Government counters with three arguments. First, the Government argues that, because Officer Hooper had grounds to arrest Mr. Malouff for possession of paraphernalia, he could have searched the car incident to the arrest without Mr. Malouff's consent. Second, the Government contends that the officers could search the vehicle without Mr. Malouff's consent because he stated there were drugs in the car. Third, the Government argues that Mr. Malouff in fact gave voluntary consent, and therefore no warrant was needed to search the Blazer.

While an officer with consent may search a vehicle without a warrant, *see United States v. Taverna*, 348 F.3d 873, 877 (10th Cir. 2003), we need not reach

- 10 -

the question whether consent was actually given here because the Government prevails on its first and second arguments. Upon finding the hypodermic needle in the flashlight, Officer Hooper could have arrested Mr. Malouff for possession of drug paraphernalia. *See* N.M. Stat. Ann. § 30-31-25.1. He, therefore, is allowed to search the Blazer without consent. *See United States v. Franco*, 981 F.2d 470, 473 (10th Cir. 1992) (permitting officers to search a vehicle incident to an arrest).

Alternatively, Officer Hooper had probable cause to search the Blazer based on Mr. Malouff's statement that there were drugs in the car. *United States v. Mercado*, 307 F.3d 1226, 1228 (10th Cir. 2002) ("When federal officers have probable cause to believe that an automobile contains contraband, the Fourth Amendment does not require them to obtain a warrant prior to searching the car for and seizing the contraband.") (internal quotation omitted). Because the officers had probable cause to believe the car contained contraband and because they could have searched the Blazer as incident to an arrest, we hold that the search did not violate the Fourth Amendment

## III. CONCLUSION

For the foregoing reasons, we AFFIRM.


ENTERED FOR THE COURT,


Deanell Reece Tacha
Chief Circuit Judge