**FILED**
**United States Court of Appeals**
**Tenth Circuit**

**May 15, 2019**

**Elisabeth A. Shumaker**
**Clerk of Court**

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**
_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

QUINCY D'OWN NASH, a/k/a Quincy
Nash,

    Defendant - Appellee.

No. 18-2095

_____

**ORDER**
_____

This matter is before the court *sua sponte* to correct a clerical error in the second full paragraph on page four of the court's May 14, 2019 order and judgment. In order to correct that clerical error, the Clerk of Court shall issue the attached corrected order and judgment effective *nunc pro tunc* to the date that the original order and judgment was filed.

Entered for the Court,

ELISABETH A. SHUMAKER, Clerk

by: Chris Wolpert
    Chief Deputy Clerk

FILED
United States Court of Appeals
Tenth Circuit

May 14, 2019

Elisabeth A. Shumaker
Clerk of Court

**UNITED STATES COURT OF APPEALS**

**FOR THE TENTH CIRCUIT**

_____

UNITED STATES OF AMERICA,

    Plaintiff - Appellant,

v.

QUINCY D'OWN NASH, a/k/a Quincy
Nash,

    Defendant - Appellee.

No. 18-2095
(D.C. No. 5:17-CR-02487-MV-1)
(D.N.M.)

_____

**ORDER AND JUDGMENT** [*]
_____

Before **MORITZ**, **KELLY**, and **EID**, Circuit Judges.
_____

In this interlocutory appeal, the government challenges the district court's order suppressing certain evidence.[1] As we explain below, we agree with the government that the district court erred when it found a law-enforcement officer exceeded the permissible scope of a weapons patdown and thereby violated the Fourth Amendment. Accordingly, we reverse the district court's suppression order and remand for further proceedings.

---

[*] This order and judgment isn't binding precedent, except under the doctrines of law of the case, res judicata, and collateral estoppel. But it may be cited for its persuasive value. _See_ Fed. R. App. P. 32.1; 10th Cir. R. 32.1.

[1] We have jurisdiction over this appeal under 18 U.S.C. § 3731. _See_ § 3731 ("An appeal by the United States shall lie to a court of appeals from a[n] . . . order of a district court suppressing . . . evidence . . . .").

## Background

Hobbs Police Officer Jayson Hoff initiated a traffic stop after he saw Quincy Nash throw a lit cigarette out of a moving vehicle and noticed that the vehicle's license plate wasn't legible. When Hoff approached the vehicle and spoke to Nash, he noticed that Nash's speech was lethargic and slurred, his eyes were bloodshot and watery, and his answers to Hoff's questions didn't make sense. Hoff suspected that Nash was intoxicated, so he radioed for backup to conduct field sobriety tests.[2]

After two backup officers arrived, Hoff asked Nash to get out of the vehicle. Hoff noticed "two large bulges in the front two pockets of [Nash's] jeans." App. vol. 2, 121. Suspecting that Nash might be armed and dangerous, Hoff patted Nash down for weapons.

Hoff described the patdown in this way: "I secured [Nash's] hands behind his back. I held his fingers, and I swiped the outside of his clothing with the inside of my hand on the right side and then on the left side." *Id.* at 124. Hoff then testified about "what happened . . . during the pat[]down search." *Id.* at 125. He said:

> When I was patting down the left front pocket, I heard and felt a crackle, which I knew, through my training and experience, to be a plastic bag. It felt like a plastic baggie or a Ziplock baggie. And I felt a bulge, which was consistent through my training and experience to be dope, as I worded it.

---

[2] The Hobbs Police Department requires its officers to record field sobriety tests on video, but Hoff's video camera wasn't working. So he needed a backup officer to record the testing.

*Id.* Hoff then asked Nash "if that was a baggie." *Id.* Nash said it wasn't. Hoff told Nash that it felt like a baggie of drugs, and he asked Nash if he could search the pocket. Nash responded by asking if he was under arrest. Rather than answering Nash's question, Hoff said he was "going to reach in and get that bag of dope." *Id.* But before Hoff could do so, "Nash broke [a]way and tried to run." *Id.*

The officers quickly caught, subdued, and arrested Nash for resisting an officer. *See* N.M. Stat. Ann. § 30-22-1. A backup officer then searched Nash incident to that arrest. In Nash's left pocket, the officer found a baggie containing 31 grams of a substance that field-tested positive for methamphetamine. In Nash's right pocket, the officer found a cell phone, a package of cigars, and a baggie of a substance that field-tested positive for marijuana. During an inventory search of the vehicle Nash was driving, Hoff found a loaded handgun under the driver's seat.

The government charged Nash with possessing methamphetamine with intent to distribute, possessing a firearm in furtherance of a drug-trafficking crime, and being a felon in possession of a weapon. *See* 18 U.S.C. § 841; *id.* § 924(c); *id.* § 922(g)(1). Nash moved to suppress the evidence found in his pockets and in the vehicle. At the suppression hearing, Hoff and the backup officers testified as described above. Additionally, the government introduced the audio recording of these events, along with a transcript of the recording.[3]

---

[3] Given the progression of events, Hoff never conducted the field sobriety tests. As such, neither of the backup officers with working video cameras ever turned them on. So the record includes only audio and a written transcript of the audio.

In a written order, the district court rejected three of Nash's four suppression arguments. First, it found that the initial traffic stop was reasonable because Hoff saw Nash throw a cigarette out of the vehicle and reasonably thought Nash's license plate wasn't legible. *See* N.M. Stat. Ann. § 30-8-4 (prohibiting littering); *id.* § 66-3-18 (requiring "clearly legible" license plates). Second, the district court found that Hoff reasonably prolonged the stop to investigate whether Nash was under the influence of drugs or alcohol. Third, it concluded that Hoff had reasonable suspicion to conduct a weapons patdown before beginning the field sobriety tests. *See Terry v. Ohio*, 392 U.S. 1, 27 (1968) (permitting officer to conduct weapons patdown if officer reasonably suspects that individual is "armed and dangerous").

But the district court accepted Nash's fourth argument, finding that Hoff exceeded the permissible scope of a weapons patdown when he felt the baggie in Nash's left pocket. The basis for this finding isn't entirely clear from the district court's suppression order. But it appears the district court concluded that Hoff didn't feel the baggie in Nash's left pocket until after Hoff completed the patdown and assured himself that Nash was unarmed. As a result, the district court suppressed the drugs found in Nash's pockets and the gun found in the vehicle because that evidence was the "fruit[] of the poisonous tree," discovered only as a result of Hoff's Fourth Amendment violation. App. vol. 1, 62.

The government filed a motion to reconsider, arguing that the district court erred in finding that Hoff didn't feel the baggie in Nash's left pocket during the patdown. It further argued that even if the patdown was unconstitutional, the district

4

court shouldn't suppress the evidence because the actual discovery of the evidence was attenuated from the Fourth Amendment violation. The district court rejected both arguments and denied the government's motion to reconsider.

The government appeals, challenging the district court's suppression ruling.

## Analysis

"In reviewing a district court's ruling on a motion to suppress evidence, we view the evidence in the light most favorable to the prevailing party and accept the district court's findings of fact unless they are clearly erroneous." *United States v. Hernandez*, 847 F.3d 1257, 1263 (10th Cir. 2017) (quoting *United States v. Oliver*, 363 F.3d 1061, 1065 (10th Cir. 2004)). And "[a] finding of fact is clearly erroneous if it is without factual support in the record or if, after reviewing all of the evidence, we are left with the definite and firm conviction that a mistake has been made." *Id.* (quoting *In re Vaughn*, 765 F.3d 1174, 1180 (10th Cir. 2014)). But the ultimate issue of whether law enforcement in fact violated "the Fourth Amendment is a question of law that we review de novo." *Id.* (quoting *Oliver*, 363 F.3d at 1065).

The government argues that the district court erred when it found that Hoff exceeded the scope of a valid weapons patdown. "The sole justification" for allowing an officer to conduct a patdown for weapons "is the protection of the police officer and others nearby." *Terry*, 392 U.S. at 29. Accordingly, an officer must confine the patdown "to an intrusion reasonably designed to discover guns, knives, clubs, or other hidden instruments for the assault of the police officer." *Id.* And "[i]f the protective search goes beyond what is necessary to determine if the suspect is armed,

5

it is no longer valid under *Terry* and its fruits will be suppressed." *Minnesota v. Dickerson*, 508 U.S. 366, 373 (1993).

Here, the district court found Hoff exceeded the scope of the patdown because it concluded that, by the time Hoff felt the baggie in Nash's left pocket, Hoff had already verified that Nash was unarmed, thus ending the justification for the patdown. This finding rested on two intermediate conclusions, both of which the government challenges. First, the district court stated that "[t]he audio recording and transcript clearly conflict with [Hoff's] testimony." App. vol. 1, 85. In the recording, as memorialized by the transcript, Hoff stated, "I notice this right pocket, you got a lot[ of] stuff going on. Is that a bagg[ie]?" App. vol. 3, 255. The district court interpreted this statement to mean that, contrary to Hoff's testimony that he felt the baggie in Nash's *left* pocket, Hoff actually felt the baggie in Nash's *right* pocket.

The district court's interpretation is incorrect. Hoff did expressly reference Nash's right pocket in the recording. But significantly, about four seconds elapsed between the reference to the right pocket and the start of Hoff's question about the baggie. There's also a distinct pause of about two seconds between the end of Hoff's statement about "a lot[ of] stuff going on" and the start of the baggie question. *Id.*

So, contrary to the district court's conclusion, the audio doesn't definitively establish that Hoff felt the baggie in Nash's *right* pocket. In fact, as the government asserts, the timing of the statements in the recording appears to align with Hoff's testimony that he patted down Nash's right pocket first and his left pocket second. In any event, we conclude that the district court clearly erred when it interpreted the

6

audio recording and transcript as unequivocally establishing that Hoff felt the baggie in Nash's right pocket. It therefore further erred when it found that the audio recording "clearly conflict[ed] with" Hoff's testimony that he felt the baggie in Nash's left pocket. App. vol. 1, 85.

Second, and more critically, the district court found that Hoff "never testified he found the baggie before he determined . . . Nash had no weapon." App. vol. 1, 83. But as the government points out, this finding contradicts Hoff's testimony at the suppression hearing. Hoff specifically replied to a question about "what happened . . . *during the pat*[]*down*" by explaining that he felt a baggie in Nash's left pocket.[4] App. vol. 2, 125 (emphasis added). That testimony establishes Hoff felt the baggie "before he determined . . . Nash had no weapon." App. vol. 1, 83.

As such, this case is distinct from *United States v. Perez*, 408 F. App'x 198 (10th Cir. 2011) (unpublished)—the primary case the district court relied on in concluding that Hoff didn't feel the baggie until after he had already completed the patdown. In *Perez*, we affirmed the district court's order suppressing evidence after finding record support for the conclusion that the officer exceeded the scope of a valid patdown. *See* 408 F. App'x at 202. In so doing, we noted that the officer "never definitively testified that he felt the object in [the defendant's] pocket before he

---

[4] The two backup officers testified similarly. One said that Hoff asked Nash whether Nash had a bag of dope in his pocket while "Hoff *was doing* the pat[]down." App. vol. 2, 201 (emphasis added). The other said that "*as soon as* [*Hoff*] *started patting* [*Nash*] *down* for weapons, [Hoff] felt what he described as . . . a bag of dope." *Id.* at 208 (emphasis added). These statements further support Hoff's testimony that he felt the baggie during the patdown.

7

completed his protective frisk." *Id.* at 201. But here, Hoff testified that the purpose of the patdown was to search for weapons and nothing else and that he felt the baggie in Nash's pocket *during* the patdown. Thus, Hoff did clearly testify that he felt the object in Nash's pocket during, or before he completed his protective frisk. *Id.* Moreover, unlike the record in *Perez*, the record here includes no other evidence indicating that Hoff did anything other than validly pat Nash down for weapons. *Cf. id.* at 200 (finding record support for district court's conclusion that officer exceeded scope of valid patdown because (1) officer testified on cross-examination that he felt object in defendant's right pocket "after completion of the protective frisk," and (2) "video show[ed] . . . a thorough frisk of the pocket area and of [d]efendant's lower legs before [officer's] final touching of the right pocket"). Thus, we don't find *Perez* persuasive.

In sum, both of the intermediate findings underlying the district court's conclusion that Hoff didn't feel the baggie in Nash's left pocket until after he completed the patdown are clearly erroneous. There is no other support in the record for that factual finding, and "we are left with the definite and firm conviction that a mistake has been made." *Hernandez*, 847 F.3d at 1263 (quoting *Vaughn*, 765 F.3d at 1180). For these reasons, we conclude that the district court erred when it ultimately concluded that Hoff exceeded the permissible scope of a weapons patdown.

Hoff's patdown therefore complied with the Fourth Amendment. *See Dickerson*, 508 U.S. at 372 (noting that patdown doesn't violate Fourth Amendment if it's "limited to that which is necessary for the discovery of weapons which might

8

be used to harm the officer or others nearby"); *United States v. Harris*, 313 F.3d 1228, 1237–38 (10th Cir. 2002) (finding no Fourth Amendment violation because officer didn't exceed scope of weapons patdown). As such, we need not reach the government's alternative argument that the discovery of the evidence was attenuated from any Fourth Amendment violation.

## Conclusion

Because the district court erred in concluding that Hoff exceeded the scope of a valid patdown, we reverse its order granting Nash's suppression motion and remand for further proceedings.

Entered for the Court


Nancy L. Moritz
Circuit Judge