## A99A1316. BUCK v. THE STATE.
(522 SE2d 252)

JOHNSON, Chief Judge.

After a bench trial, Jeffrey Buck was convicted of possession of cocaine. On appeal, he challenges the trial court's denial of his motion to suppress, arguing that the police detained him unlawfully and that his consent to search was not valid. We disagree with both arguments and affirm.

In reviewing a trial court's ruling on a motion to suppress,

> the evidence is construed most favorably to uphold the findings and judgment, and the trial court's findings on disputed facts and credibility are adopted unless they are clearly erroneous. Further, since the trial court sits as the trier of fact, its findings are analogous to a jury verdict and will not be disturbed if there is any evidence to support them.

(Citations and punctuation omitted.) *Williams v. State*, 236 Ga. App. 102 (511 SE2d 216) (1999).

So viewed, the evidence shows that a groundskeeper for a softball field called police to report that an unoccupied parked car blocked his access to a storage shed on the field. When an officer arrived, no one was in or near the car. Nor was anyone other than the groundskeeper in the area. The officer ran a tag check on the car and learned that it had not been reported stolen. The officer telephoned the registered owner, Patricia Buck, but no one answered. The officer walked around the area in search of the car's owner. Another officer arrived, and the two walked along some nearby railroad tracks.

Jeffrey Buck, who had been walking along the tracks, approached the officers. The officers asked Buck if the car was his, and Buck replied that it was. The officers then asked him his name. Buck gave his name, but had no identification. Buck was carrying a pair of women's high-heeled shoes; the shoes were wet and covered with sand. The first officer asked Buck where he got the shoes. He responded that he found them by a nearby bridge. When asked what he was doing in the area, Buck told the officers that he was sunbathing. The first officer asked Buck if he traveled 40 miles from his home to sunbathe there, to which Buck replied that he had. Buck

appeared to be extremely nervous. Because of the circumstances, the officer became concerned as to whether a woman was in the area and whether she was safe. One of the officers asked Buck if he had drugs or weapons on his person. He said he did not and agreed to let the officer pat him down. The pat-down did not reveal any weapons or contraband.

As Buck and the first officer stood by the tracks, the other officer walked toward the creek area from which Buck had come. Two more officers arrived. One officer stayed with Buck and the first officer. The other officer joined in the search of the creek bank. The first officer testified that he and Buck just stood there during the search of the area, with little or no conversation. The officer testified that Buck was free to leave at that point, though he did not so inform Buck.

One of the officers at the creek radioed the first officer and reported seeing prints from a woman's high-heeled shoes in the sand. The officer testified that there was torn clothing on the ground and it looked as if there had been a struggle in the area. He also found fresh cigarette butts and ashes on the creek bank.

Buck told the officers he had not been in the area where the cigarette butts were found. The officers wanted to see if Buck had the same brand of cigarettes as those found near the creek. One of the officers asked Buck if he had any cigarettes in his possession. He said he did not. The officer asked Buck if he would allow police to search him. Buck said he did not mind. Buck handed one of the officers the sunglasses case he was holding. The officer opened the case and discovered a clear plastic bag containing a white powdery substance which tested positive for cocaine. Buck was arrested and taken to police headquarters. Officers continued to search the area because of their suspicions surrounding the apparently absent woman, but found nothing.

There are at least three levels of police-citizen encounters: (1) communication between police and citizens involving no coercion or detention and therefore without the compass of the Fourth Amendment; (2) brief seizures that must be supported by reasonable suspicion; and (3) full-scale arrests that must be supported by probable cause. *State v. King*, 227 Ga. App. 466, 468 (489 SE2d 361) (1997).

The detention in this case falls within the second type of encounter. The officers testified that they initially sought to find the owner of the car which blocked the shed. When they first encountered Buck and asked him about the car and his reason for being in the area, the officers learned that Buck was carrying women's shoes, was alone, was extremely nervous, and was not the registered owner of the car. The officers' investigation of the area revealed evidence of a struggle, torn clothing and high-heel prints in the sand. The officers' initial

questioning and observations caused them to form a reasonable and articulable suspicion that a woman may have been a victim of foul play and that Buck may have been involved. If there is a reasonable suspicion of criminal wrongdoing, based upon specific and articulable facts from which it can be determined that the actions of the police officers are not arbitrary or harassing, the officers may briefly detain the individual in order to determine his identity or to maintain the status quo momentarily while obtaining more information. *Gonzalez v. State*, 235 Ga. App. 253, 254 (509 SE2d 144) (1998). Under the circumstances presented here, the officers were authorized to detain Buck temporarily to maintain the status quo while obtaining more information. See *Mallarino v. State*, 190 Ga. App. 398, 401 (2) (379 SE2d 210) (1989).

Buck complains that officers were not authorized to detain him as long as they did without probable cause. The United States Supreme Court has adopted a two-part inquiry for evaluating the reasonableness of an investigative stop: (1) whether the officers' action was justified at its inception, and (2) whether it was reasonably related in scope to the circumstances which justified the interference in the first place. *State v. Johnson*, 209 Ga. App. 84, 86 (432 SE2d 580) (1993).

The second part of this inquiry includes a consideration of the requirement that investigative detentions be brief. In assessing the effect of the length of the detention, it must be determined whether the officers diligently pursued their investigation. *Johnson*, supra. No rigid time limitation is imposed; instead, we must consider the law enforcement purposes to be served by the stop and the time reasonably needed to effectuate those purposes. *Mallarino*, supra. "Much as a bright line rule would be desirable, in evaluating whether an investigative detention is unreasonable, common sense and ordinary human experience must govern over rigid criteria." (Citation and punctuation omitted.) *State v. Grant*, 195 Ga. App. 859, 864 (3) (394 SE2d 916) (1990). "A key consideration is whether the police are acting in a swiftly developing situation, and in such cases the court should not indulge in unrealistic second-guessing." (Citation and punctuation omitted.) *Mallarino*, supra at 402. Applying these factors to the facts of this case, we find that the officers' detention of Buck for approximately one hour from the time they approached him until the time he consented to the search of his sunglasses case was not unreasonable. See id. (thirty-three-minute detention before consent given reasonable under circumstances); *Grant*, supra (more than one hour investigative detention reasonable).

It was during this reasonable detention that the officers asked for and obtained Buck's consent to search his sunglasses case. A valid consent during a lawful detention eliminates the need for probable

cause. *Eaves v. State of Ga.*, 236 Ga. App. 279, 280 (2) (511 SE2d 621) (1999); *O'Donnell v. State*, 200 Ga. App. 829, 833 (1) (409 SE2d 579) (1991). Thus, because the detention was authorized, the only question remaining is whether Buck's consent to search was valid.

Voluntariness of consent is a factual determination to be made by considering the totality of the circumstances. *State v. Norrington*, 203 Ga. App. 574, 575 (417 SE2d 203) (1992). In looking at the totality of circumstances, the court may consider such factors as the age of the accused, the length of detention, whether he was advised of his constitutional rights, the prolonged nature of questioning, the use of physical punishment, and the psychological impact of these factors on the accused. No single factor is controlling. Id. Contrary to Buck's contention, officers were not required to inform him that he had a right to refuse the request to search. See *Semelis v. State*, 228 Ga. App. 813, 814 (1) (a) (493 SE2d 17) (1997). The giving of such information is but one factor to be taken into account. Id.

Buck was 32 years old on the date of the incident. Although Buck waited at the scene about an hour as officers investigated the circumstances surrounding his presence there, there was no prolonged questioning, no weapons were drawn, no physical restraints were placed on him, and no threats were made. The trial court's finding that Buck freely and voluntarily consented to the search was authorized by the evidence. See generally *Benavides v. State*, 193 Ga. App. 737, 739 (388 SE2d 886) (1989). The trial court did not err in denying Buck's motion to suppress.

*Judgment affirmed. Smith and Eldridge, JJ., concur.*

DECIDED SEPTEMBER 7, 1999.

*Darel C. Mitchell*, for appellant.
*Daniel J. Porter, District Attorney, R. Keith Miles, Assistant District Attorney*, for appellee.