## A04A1305. THE STATE v. BIBBINS.
(609 SE2d 362)

ELDRIDGE, Judge.

The State appeals from an order granting Stephen Ralph Bibbins' motion to suppress drugs found pursuant to an alleged consent search conducted during the course of a valid traffic stop. The trial court did not make a factual finding about whether consent was actually obtained. Instead, the court determined that the detaining

officer "exceeded the scope" of the traffic stop in asking for consent to search for drugs; thus, Bibbins' consent, if any, was the product of an "illegal detention." The following stipulated facts are necessary for proper resolution of this appeal.

While traveling on Interstate 75 on June 5, 2003, Special Agent Alex Bauch of the Griffin-Spalding Narcotics Task Force stopped a truck driven by Bibbins after the truck crossed the fog line. Bauch approached the vehicle, obtained Bibbins' driver's license, noted that Bibbins had a Florida address, and informed him that he had been stopped for crossing the fog line. Bauch then ran Bibbins' license information through the police computer and discovered no problems. He returned to Bibbins' truck and, just before writing a citation for failure to maintain lane, stated, "Do you mind if I ask you a question?" When Bibbins responded, "Sure," Bauch told him that Spalding County had a problem with "people driving through with large amounts of drugs, marijuana, and guns, and currency related to the drug trade." Bauch then asked Bibbins whether he could search Bibbins' vehicle for contraband. At that point, Bauch was still holding Bibbins' license in preparation for writing out a traffic ticket. Based upon Bibbins' reply, a search was conducted and approximately four pounds of marijuana was discovered. The officer then arrested Bibbins and cited him for the drug possession and the lane violation.

*Held*:

By this appeal, we are squarely presented with the opportunity to address an issue that — as the transcript of the motion to suppress hearing amply demonstrates — has caused considerable consternation in law enforcement circles, as well as with bench and bar, i.e., whether *asking* for consent to search for drugs during the course of a brief, ongoing traffic stop can, in and of itself, be a Fourth Amendment violation so as to make a valid detention "illegal," thereby rendering any consent to search the product of such illegal detention. This Court welcomes the chance to consider this issue, since the confusion that can be generated by the application of Fourth Amendment legal principles in the "real world" has not gone unnoticed. We who parent wisdom through written opinion also recognize that "[m]ore wisdom is latent in things as they are than in all the words men use."[1] So, a pragmatic deliberation encompassing the views of other jurisdictions on this issue is warranted and due.

1. In the field, even when officers have no basis for suspecting a person, they may approach and request consent to search for drugs.[2] This is a "first tier" encounter, and the request to search, itself, does

---

[1] Antoine de Saint-Exupery.

[2] *Palmer v. State*, 257 Ga. App. 650, 652 (1) (572 SE2d 27) (2002).

not turn the encounter into an illegal detention: "it is clear that merely requesting consent for a search is not a seizure and does not require articulable suspicion."[3] So, too, an officer may detain a citizen when a traffic violation has been committed in his presence; this detention is a legitimate "second tier" encounter. However, in this instance, the dissent would find that an officer may not request consent to search for drugs; that the request, itself, turns the otherwise legitimate detention into a Fourth Amendment violation.

What an anomalous result. Approaching a person to request consent to search causes him to stop for at least the time needed to hear the request and respond, which delay could be called a "detention," though it is not. Yet the same request asked of someone already lawfully detained causes no undue delay, but is considered by the dissent to create an unlawful "detention." If a request to search does not turn a first tier encounter into an invalid detention, the same request does not turn a second tier encounter into an invalid detention. After all, a refusal is an authorized result in both instances. Rather, "police questioning, by itself, is unlikely to result in a Fourth Amendment violation."[4] Indeed,

> a police officer's questioning, even on a subject unrelated to the purpose of the stop, is not itself a Fourth Amendment violation. Mere questioning is neither a search nor a seizure.... [T]he issue regarding unrelated questions concerns not the content of the questions, but their impact on the duration of the stop.... Therefore, only unrelated questions which unreasonably prolong the detention are unlawful; detention, not questioning, is the evil at which *Terry*'s prohibition is aimed.[5]

In *State v. Gibbons*,[6] this Court considered a *Terry* detention in which an officer instituted a valid traffic stop for a seat belt violation, but he performed no act necessary to discharge the duties that he had incurred by virtue of the traffic stop: he did not conduct a license check, vehicle check, or insurance check; and he did not make any inquiry relating to the traffic violation for which the stop was made. Nor did he ever indicate that the detainee would be cited for a seat

---

[3] *Stokes v. State*, 238 Ga. App. 230, 232 (518 SE2d 447) (1999). See also *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991) (police questioning does not constitute a seizure for Fourth Amendment purposes).

[4] *Immigration & Naturalization Svc. v. Delgado*, 466 U. S. 210, 216 (104 SC 1758, 80 LE2d 247) (1984).

[5] (Citation and punctuation omitted.) *United States v. Purcell*, 236 F3d 1274, 1279-1280 (11th Cir. 2001).

[6] 248 Ga. App. 859 (547 SE2d 679) (2001).

belt violation. In fact, the officer admitted that he obtained the detainee's driver's license, retained it, and thereafter asked numerous, wide-ranging questions simply because he had "an uneasy feeling" about the detainee.[7] Under the specific facts of *Gibbons*, the detention following the initial stop of the vehicle appeared to be a pretext to furnish the officer solely with a forum to ask questions, not to pursue the ends of a legitimate traffic stop. Consequently, we upheld the trial court's grant of the motion to suppress. Central to our decision, however, was the unreasonable prolongation of the *duration* of the traffic stop solely in order to ask questions: "It [was] this continued detention that [made] the questioning and request to search without reasonable suspicion of criminal activity impermissible."[8] This distinction must not be lost: the unreasonable prolongation of the duration of the *seizure* — not the content of the questions — invalidated the stop.[9]

It must also be understood that the duration of a traffic stop is not synonymous with its "scope," and for several years now, this has been a gray area. The issue of the "scope" of a search and seizure was first articulated in *Terry*, itself, where it was held that a search and seizure must be "reasonably related in scope to the circumstances which justified the interference in the first place";[10] to that end, a traffic detention "must be temporary and last no longer than is necessary to effectuate the *purpose* of the stop."[11] A simplistic interpretation of the term "purpose" might propel the conclusion that it refers to only the specific traffic offense that inspired the pull-over, and thus, any action or inquiry unrelated to that specific traffic offense is impermissible. But to accept this interpretation would be to deny the realities of a traffic stop, which has as its "purpose" the enforcement of traffic laws for highway public safety,[12] and in which law enforcement has never been restricted simply to writing out a ticket and ending the encounter. Instead, an officer's duties relative to *any* traffic detention have always included a computerized check of license, registration, vehicle identification number (VIN), and identification, regardless of the specific violation involved. "The foremost method of enforcing traffic and vehicle safety regulations, it must be

---

[7] Id. at 863.

[8] Id. at 864 (Pope, P. J., concurring specially).

[9] See *United States v. Machuca-Barrera*, 261 F3d 425, 432 (5th Cir. 2001) (it is "the length of the detention, not the questions asked, that makes a specific stop unreasonable"); accord *United States v. Brigham*, 382 F3d 500, 508 (5th Cir. 2004) (en banc).

[10] *Terry v. Ohio*, 392 U. S. 1, 20 (88 SC 1868, 20 LE2d 889) (1968).

[11] (Emphasis supplied.) *Florida v. Royer*, 460 U. S. 491, 500 (103 SC 1319, 75 LE2d 229) (1983).

[12] *Delaware v. Prouse*, 440 U. S. 648, 658-660 (99 SC 1391, 59 LE2d 660) (1979).

recalled, is acting upon observed violations. Vehicle stops for traffic violations occur countless times each day; and on these occasions, licenses and registration papers are subject to inspection and drivers without them will be ascertained."[13] Certainly, "[s]uch checks serve a valid traffic and general law enforcement purpose as they warn the responding officer of any known dangers about the person stopped and the status of the car. They are also closely related to the purpose for the initial detention — traffic safety and security."[14] During the course of an ongoing traffic stop where these duties are being diligently pursued, this Court has long allowed law enforcement to ask brief, general investigative questions such as those related to travel plans, itinerary, and ownership of the vehicle.[15] Comparable questions have been approved in other jurisdictions as relating to the scope of any traffic investigation.[16] And such questions asked during the course of a traffic violation investigation do not unreasonably prolong the duration of the stop. As a practical matter, it takes time to check a detainee's license and registration and to complete a citation or warning, whether brief general investigative questions are asked or not; as long as the questions do not unreasonably delay the accomplishment of these activities, the stop has not been prolonged.[17] Also, under the same circumstances, the highest court in

---

[13] Id. at 659.

[14] *Kothe v. State*, 152 SW3d 54, 64, n. 36 (Tex. Crim. App. 2004); *State v. Pegeese*, 351 N.J. Super. 25, 31 (796 A2d 934) (2002).

[15] See, e.g., *United States v. Hardy*, 855 F2d 753 (I) (N.D. Ga. 1988); *Almond v. State*, 242 Ga. App. 650 (530 SE2d 750) (2000); *State v. Hall*, 235 Ga. App. 412 (509 SE2d 701) (1998); *Sprauve v. State*, 229 Ga. App. 478 (494 SE2d 294) (1997); *Gamble v. State*, 223 Ga. App. 653, 655-656 (478 SE2d 455) (1996); *Sutton v. State*, 223 Ga. App. 721, 723-724 (478 SE2d 910) (1996); *Pitts v. State*, 221 Ga. App. 309 (471 SE2d 270) (1996); *Roundtree v. State*, 213 Ga. App. 793 (446 SE2d 204) (1994); *Benavides v. State*, 193 Ga. App. 737 (388 SE2d 886) (1989); *State v. Combs*, 191 Ga. App. 625 (382 SE2d 691) (1989); *O'Keefe v. State*, 189 Ga. App. 519, 520 (376 SE2d 406) (1988); *Lombardo v. State*, 187 Ga. App. 440 (370 SE2d 503) (1988); *Smith v. State*, 184 Ga. App. 304, 305-306 (361 SE2d 215) (1987); *Daugherty v. State*, 182 Ga. App. 730 (356 SE2d 902) (1987).

[16] *Berkemer v. McCarty*, 468 U. S. 420, 439 (104 SC 3138, 82 LE2d 317) (1984). Accord *United States v. Jeffus*, 22 F3d 554, 556-557 (4th Cir. 1994); *United States v. Villa*, 153 FSupp.2d 1247 (2001); *United States v. Purcell*, supra at 1279-1280; *United States v. Shabazz*, 993 F2d 431 (5th Cir. 1993); *United States v. Palomino*, 100 F3d 446, 449-450 (6th Cir. 1996); *United States v. Bullock*, 48 Fed. Appx. 912, 2002 U. S. App. LEXIS 22511 (2002); *State v. Griffith*, 236 Wis.2d 48 (613 NW2d 72, 78-85) (2000); *State v. McClendon*, 130 N.C. App. 368, 375 (502 SE2d 902) (1998).

[17] *Kothe v. State*, supra; accord 4 W. LaFave, Search and Seizures § 9.2 (f), at 51-58. See also *United States v. Sharpe*, 470 U. S. 675 (105 SC 1568, 1576, 84 LE2d 605) (1985) ("Clearly this case does not involve any delay unnecessary to the legitimate investigation of the law enforcement officers."); *United States v. Zucco*, 71 F3d 188, 190-191 (5th Cir. 1995) (*Terry* detention not prolonged merely because officer waited for computer check); *State v. Maginnis*, 150 SW3d 117 (Mo. Ct. App. 2004) (as long as the officer is running the records check, and issuing a citation, the officer may continue to conduct a reasonable investigation of the traffic violation by conversing with the driver).

this nation has recognized the authority of an officer to ask a drug-related question during the course of a traffic stop, e.g., "Are you carrying any illegal contraband in your car? Any weapons of any kind, drugs, anything like that?"[18] Such an inquiry is reasonably related to legitimate highway public safety concerns "in light of the problem of interstate drug traffic."[19] It is minimally intrusive and does not unreasonably prolong an ongoing detention.[20] So, too, during the course of an ongoing traffic investigation, a simple request for consent to search is not impermissible and does not cause unreasonable delay.[21] As one of our sister states determined when considering the same issues we speak to today,

> [Defendant] argues . . . that the very *asking* of the first question about drugs and firearms, without a reasonable suspicion that he possessed either, transformed the legal stop into an illegal stop, making his consent automatically invalid. In *Robinette*, [supra,] the police asked the suspect the same question, immediately followed by a request to search, just as in this case. The [United States Supreme] Court in *Robinette* did not expressly decide whether the asking of this question and asking permission to search violated the Fourth Amendment. However, we have difficulty in reconciling its conclusion — that Robinette's consent to search, if voluntary based on all the circumstances, is valid — with [defendant's] proposition that the consent is invalid solely because the officers could not legally ask to search in the first place.[22]

This Court's long-held position on this issue is illustrated as follows:

---

[18] *Ohio v. Robinette*, 519 U. S. 33, 38-39 (117 SC 417, 136 LE2d 347) (1996); *Delaware v. Prouse*, supra at 654.

[19] *State v. Hall*, supra at 415; accord *O'Keefe v. State*, supra at 525; *Kan v. State*, 199 Ga. App. 170, 171 (1), (2) (404 SE2d 281) (1991).

[20] *State v. Akuba*, 686 NW2d 406, 417-418 (S.D. 2004); *State v. Hickman*, 335 N.J. Super. 623, 636-637 (763 A2d 330) (2000); *State v. Griffith*, supra; *State v. Gaulrapp*, 207 Wis.2d 600, 608-609 (558 NW2d 696) (1996).

[21] *Schneckloth v. Bustamonte*, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973) (upholding a request to search made during a traffic stop). See also *United States v. Wellman*, 185 F3d 651, 656 (6th Cir. 1999) (traffic stop not unconstitutionally extended by obtaining consent to search motor home while officer was waiting for information on defendant's driver's license and vehicle registration); accord *United States v. Brigham*, supra at 509; *People v. Bell*, 43 Cal. App.4th 754, 765-768 (51 Cal. Rptr. 2d 115) (1996); *State v. Akuba*, supra at 417-418; *State v. Watkins*, 73 SW3d 881, 883 (Mo. App. 2002); *State v. Hunter*, 107 N.C. App. 402, 407 (420 SE2d 700) (1992), overruled on other grounds, *State v. Pipkins*, 337 N.C. 431 (446 SE2d 360) (1994); *State v. Hyland*, 840 SW2d 219, 221 (Mo. 1992); *State v. Acinelli*, 191 Ariz. 66, 69 (2) (952 P2d 304) (1997).

[22] (Emphasis supplied.) *State v. Gaulrapp*, supra at 608.

During this valid traffic stop, [the trooper] asked [the defendant] about weapons and drugs and then asked for consent to search. [Defendant] claims that the police officer's mere asking of the questions, which admittedly did not prolong the stop, was in and of itself a violation of his constitutional rights and rendered his consent invalid. We have previously rejected such a notion. Having already effected a valid stop of the vehicle, the trooper certainly did not violate the appellant's Fourth Amendment rights merely by requesting such consent.[23]

This holding and the numerous cases which reflect it have never been overruled and are binding authority on this Court.

Truly, from the sheer volume of cases cited, both supra and by the dissent, it bears recognition that the disarray generated through the practical application of complex Fourth Amendment issues is extensive. Conflict exists. Yet, it is not only incorrect but a deep oversimplification to say, as the dissent has, that the Eighth, Ninth, and Tenth Circuits "have held that an officer may not ask questions during a traffic stop that are unrelated to the purpose of the original stop." Such a blanket statement ignores the struggle these circuits have had with this issue, a struggle that mirrors our own. Like here, there is a "split in authority" within the circuits themselves. Scratch the surface of any of the cases cited by the dissent, and additional cases revisiting the issue for an alternate result will be revealed. For example, the dissent's multiple cites to the Tenth Circuit case, *United States v. Holt*,[24] for the proposition that questioning, itself, may be a Fourth Amendment violation ignores that circuit's more recent foray into this arena, *United States v. Oliver*.[25] *Oliver* went to great lengths to distinguish *Holt*, asserting that *Holt* had not meant to go as far as some might have it; that *Holt* stood only for "reasonableness" in any detention and that, "[q]uestioning in itself does not constitute a search or seizure."[26] Indeed, *Oliver* reaffirmed the Tenth Circuit's prior statement in *United States v. Walker*:[27]

---

[23] (Punctuation omitted.) *Henderson v. State*, 250 Ga. App. 278, 279 (551 SE2d 400) (2001) (physical precedent only), citing *Kan v. State*, supra at 171; *Pupo v. State*, 187 Ga. App. 765, 766 (2) (371 SE2d 219) (1988). Accord *State v. Benjamin*, 266 Ga. App. 205, 206 (2) (596 SE2d 623) (2004); *Anderson v. State*, 265 Ga. App. 146, 150 (2) (592 SE2d 910) (2004); *Navicky v. State*, 245 Ga. App. 284, 285 (2) (537 SE2d 740) (2000); *Gamble v. State*, 223 Ga. App. 653, 656 (3) (478 SE2d 455) (1996).

[24] 264 F3d 1215 (10th Cir. 2001).

[25] 363 F3d 1061 (10th Cir. 2004).

[26] Id. at 1067.

[27] 933 F2d 812 (10th Cir. 1991).

[O]ur determination that the defendant was unlawfully detained might be different if the questioning by the officer did not delay the stop beyond the measure of time necessary to issue a citation. For example, this case would be changed significantly if the officer asked the same questions while awaiting the results of an NCIC license or registration inquiry.[28]

The point is that the mixed messages reflected in the case law demonstrate the slippery slope of confusion created when Fourth Amendment search and seizure law is used to control perceived police abuses against which the Fourth Amendment was never designed to protect. That police questioning occurs during a traffic seizure does not make the *questioning* a Fourth Amendment issue; the seizure is. And the dissent's justification that this issue is "far from settled" in other jurisdictions is hardly a rationale to leave it so in this one.[29]

Today, this Court takes a step toward clarity, as have the courts from many other jurisdictions. We reaffirm the long-standing precepts addressed above, recognizing that the "scope" of a traffic detention has never been limited to the isolated traffic offense that led to the pull-over, but is broad enough to encompass identified, legitimate law enforcement goals relating to highway public safety, as long as the pursuit of those goals does not unreasonably prolong the duration of a valid, ongoing stop.[30]

2. In a hearing on a motion to suppress, the focus on the unreasonable prolongation of the duration of an ongoing, valid traffic investigation — decided on a case-by-case basis — precludes a deliberate delay in issuing a citation while conducting a lengthy "fishing expedition," as occurred in the *Gibbons* case. In assessing whether a valid, ongoing traffic investigation is too long in duration

---

[28] Id. at 816, n. 2; see *United States v. Oliver*, supra at 1066.

[29] Contrary to the dissent's urging, the Supreme Court of Georgia case of *Daniel v. State*, 277 Ga. 840 (597 SE2d 116) (2004), clearly held that "[o]nce the underlying basis for the initial traffic stop has *concluded*," lengthening a detention must be either consensual or supported by articulable suspicion. (Emphasis supplied.) Id. at 841. *Daniel* did not address questions asked during the course of a valid stop that did not lengthen the detention. Accordingly, the post-stop "consensual encounter" analysis employed by *Daniel* is not applicable here, in the middle of an ongoing traffic stop which is nonconsensual from the inception. Instead, during an ongoing traffic detention, "the issue regarding unrelated questions concerns not the content of the questions, but their impact on the duration of the stop." *United States v. Purcell*, supra at 1279-1280. Moreover, *Daniel*'s emphasis on the "lengthening of the detention" appears to dispel the dissent's position that a question, in itself, can constitute a Fourth Amendment violation.

[30] See *Illinois v. Lidster*, 540 U. S. 419 (124 SC 885, 157 LE2d 843) (2004) (approving a roadblock/checkpoint for the primary purpose of general law enforcement because "Law enforcement officer[s] may . . . request any person to furnish information or otherwise cooperate in the . . . prevention of crime.") (punctuation omitted).

to be justified, common sense must reign.[31] The "touchstone of the Fourth Amendment is reasonableness . . . measured in objective terms by examining the totality of the circumstances."[32] Therefore, a reviewing court may consider many factors in determining whether the duration of an ongoing traffic detention has been unreasonably prolonged, by questioning or otherwise. These factors may include the length of time involved; however, it should be remembered that the establishment of a rigid time frame for traffic detentions has been expressly rejected by Fourth Amendment jurisprudence.[33] Additional inquiry should examine whether during the detention the police were diligently pursuing "a means of investigation that was likely to confirm or dispel their suspicions quickly, during which time it was necessary to detain the defendant";[34] whether (as in *Gibbons*) wide-ranging questioning extended the duration of the stop beyond a reasonably brief period;[35] and whether there was an unwarranted delay in returning a driver's license or issuing a citation which extended the stop's duration unreasonably. This list is by no means exhaustive; it is not meant to be. Pragmatically, as the cases before this Court illustrate, the permutations between traffic stops are as great as the variations between the participants and the circumstances surrounding each encounter.

In the case before us, the evidence is that the brief, nine-minute traffic detention had not been concluded at the time the officer requested consent to search. During the ongoing detention, the record shows that the officer conducted a license and insurance check; that the checks were diligently pursued; that the officer was holding Bibbins' license in preparation for writing out a traffic citation; that the request for consent to search was made immediately after the license was checked and just before the ticket was written and thus the request, itself, did not cause unreasonable delay; that the search allegedly agreed to by Bibbins postponed the issuance of the lane

---

[31] In that regard, the further inapplicability of *Daniel v. State*, supra, to the dissent's analysis is illustrated by the dissent's decidedly circular reasoning: the dissent quotes *Daniel*: " '[e]ven where the driver and vehicle occupants have been illegally detained, the driver or owner of the vehicle may nonetheless voluntarily consent to a search of the vehicle.' " *Daniel* at 846. But the dissent holds, "even if Bibbins voluntarily agreed to the vehicle search, . . . the illegal detention tainted the consent." How can it be that under *Daniel*, voluntary consent can cure an illegal detention, but under the dissent, an illegal detention will taint voluntary consent? The source of the conflict is the dissent's belief that the *request* to search for drugs *creates* the illegal detention because it is unrelated to the traffic violation that provoked the stop. When the *request*, itself, creates the illegality, any consent will always be the "product" of the illegal request and thus tainted, making *Daniel* impossible to apply rationally.

[32] (Citation and punctuation omitted.) *Ohio v. Robinette*, supra at 39.

[33] *United States v. Sharpe*, supra at 686-687.

[34] Id. at 686.

[35] *State v. Gibbons*, supra at 860-863 (2).

violation citation and thus such postponement was acquiesced in; that the citation was in fact issued after the search; and that no extensive questioning occurred. There is no claim that the traffic stop was illegal, and the described circumstances meet the State's burden to establish the validity of the ongoing traffic investigation. The evidentiary burden to prove an illegality then shifted to Bibbins.[36] Bibbins did not meet his burden to show that the officer's request to search unreasonably prolonged the duration of the nine-minute traffic detention so as to render the ongoing traffic detention illegal. Accordingly, any consent to search was not the product of an "illegal detention." The trial court's grant of Bibbins' motion to suppress was error.

3. Having concluded that the officer's request to search Bibbins' car for contraband did not render the otherwise valid traffic stop an illegal detention, another issue remains: whether Bibbins voluntarily consented to the search of his car. The analysis of this issue should not be confused with the analysis discussed above. The question of whether the duration of an ongoing, valid traffic detention and investigation is "reasonable" involves a separate inquiry. If the answer is no, an illegal detention results. At that point, it matters not whether the stop was "ongoing" or "concluded," the issue remains the same: whether the subsequent consent was the product of the prior illegality or sufficiently attenuated therefrom.[37]

If, however, as in this case, the duration of the ongoing detention and investigation was reasonable, the question is whether objective factors demonstrate that the detainee's consent was voluntary. In that regard, the circumstances surrounding a traffic stop do not in and of themselves prevent a detainee from voluntarily consenting to a search of his vehicle. As the United States Supreme Court explained in its examination of the issue of voluntary consent during a traffic stop,

> There is no reason to believe, under circumstances such as are present here, that the response to a policeman's question

---

[36] *United States v. Sharpe*, supra at 687-688 (defendants must present evidence that the officers were dilatory in their investigation). See also *Davis v. State*, 266 Ga. 212 (465 SE2d 438) (1996); *Watts v. State*, 274 Ga. 373, 375-376 (2) (552 SE2d 823) (2001). Both *Davis* and *Watts* contain a legal discussion of the shifting burdens involved in OCGA § 17-5-30 (b), which governs *all* motions to suppress in Georgia. Thus, while the facts of *Davis* and *Watts* may have involved a search warrant, the legal, "burden shifting" discussion contained therein applies to this case and all other cases involving motions to suppress.

[37] See *Daniel v. State*, supra at 846.

is presumptively coerced; and there is, therefore, no reason to reject the traditional test for determining the voluntariness of a person's response.[38]

This traditional test looks to the totality of the circumstances, including factors such as the youth of the accused, his lack of education, his lack of intelligence, the length of detention, whether there was an advisement of constitutional rights, the repeated and prolonged nature of any questioning, the use of physical punishment, and the psychological impact of all these factors on the accused; certainly, no single factor is controlling.[39] Further, advisement of the right to refuse is a consideration, but it is not determinative.[40] Altogether, the role of filtering the wheat from the chaff in relation to the voluntariness of any consent belongs to the trial court. The appellate courts cannot judicially legislate against the potential for coercive police conduct in attaining voluntary consent anymore than we can ignore the legality of a search carried out after consent has been voluntarily given.

> The problem of reconciling the recognized legitimacy of consent searches with the requirement that they be free from any aspect of official coercion cannot be resolved by any infallible touchstone. To approve such searches without the most careful scrutiny would sanction the possibility of official coercion; to place artificial restrictions upon such searches would jeopardize their basic validity.[41]

We leave the role where it belongs. In the case before us, the trial court declined to make a factual determination as to whether consent was given and, if so, whether such consent was voluntary. We remand this case to the court below for this determination, with a right to seek an appeal through established channels, depending upon the result.[42]

*Judgment reversed and case remanded with direction. Andrews, P. J., Johnson, P. J., Miller and Ellington, JJ., concur. Ruffin, P. J., and Adams, J., dissent.*

RUFFIN, Presiding Judge, dissenting.
Because the majority's opinion effectively overrules established

---

[38] *Schneckloth v. Bustamonte,* supra at 247.
[39] Id. at 226; *Hunter v. State,* 190 Ga. App. 52, 53 (1) (378 SE2d 338) (1989).
[40] *Schneckloth v. Bustamonte,* supra at 226-227.
[41] Id. at 229.
[42] OCGA §§ 5-6-34 (b); 5-7-1 (a) (4).

precedent without so stating[43] and ignores the Supreme Court's decision in *Daniel v. State*,[44] I respectfully dissent.

This case revolves around Stephen Ralph Bibbins' alleged consent to the search of his vehicle during a traffic stop. Recently, our Supreme Court set forth a framework for analyzing the validity of such consent. First addressing the limits of a traffic stop, the Court in *Daniel v. State* noted that

> [t]he officer's purpose in an ordinary traffic stop is to enforce the laws of the roadway, and ordinarily to investigate the manner of driving with the intent to issue a citation or warning. Once the purpose of that stop has been fulfilled, the continued detention of the car and the occupants amounts to a second detention.[45]

A traffic stop usually should last no longer than necessary to complete the purpose of the stop, and its scope " 'must be carefully tailored to its underlying justification.' "[46] Thus, under *Daniel*, the initial question is whether the police inquiry exceeded the permissible limits of a valid traffic stop. If the inquiry fell within those limits, the detention was lawful, and we address whether consent made during the lawful detention was voluntary.[47] But, if the police inquiry exceeded the stop's legal limits, we must analyze the constitutionality of the expanded encounter and determine whether it violated the Fourth Amendment.

Extending an encounter beyond the initial stop is not always unconstitutional.[48] As found in *Daniel*,

> lengthening the detention for further questioning beyond that related to the initial stop is permissible in two circumstances. First, the officer may detain the driver for questioning unrelated to the initial stop if he has an *objectively* reasonable and articulable suspicion illegal activity has

---

[43] See, e.g., *State v. Habib*, 260 Ga. App. 229 (581 SE2d 576) (2003); *State v. Gibbons*, 248 Ga. App. 859, 863 (2) (547 SE2d 679) (2001); *Smith v. State*, 216 Ga. App. 453, 455 (2) (454 SE2d 635) (1995). In his dissenting opinion in *Gibbons*, the author of the current majority expressly stated that *Smith*, supra, should be overruled. See *Gibbons*, supra at 869 (Eldridge, J., dissenting). Although the current majority opinion does not expressly overrule *Smith*, it achieves this result.

[44] 277 Ga. 840 (597 SE2d 116) (2004).

[45] (Punctuation omitted.) Id. at 841 (1).

[46] Id.

[47] See *Buck v. State*, 239 Ga. App. 828, 831 (522 SE2d 252) (1999) (when an individual consents to a search during a lawful detention, "the only question remaining is whether [the] consent to search was valid").

[48] See *Daniel*, supra.

occurred or is occurring. Second, further questioning unrelated to the initial stop is permissible if the initial detention has become a consensual encounter.[49]

Once again, if the extended encounter was permissible under the Fourth Amendment, we immediately consider whether the consent was voluntary.[50] If the encounter constituted an illegal second detention, however, we then determine "whether the consent was given voluntarily (under the totality of the circumstances test) and whether that consent was sufficiently attenuated from the unlawful seizure so that it was not the product thereof."[51]

The *Daniel* framework — which binds this Court — thus presents three questions for analysis: (1) Did the police inquiry extend beyond the limits of the original traffic stop? (2) If so, was the extended encounter legal under the Fourth Amendment? and (3) If consent resulted during an illegal detention, was it both voluntary *and* sufficiently attenuated from the unlawful detention that it was not the product thereof? I will discuss each question in turn.

1. Although the majority does not address the *Daniel* framework, the basis of its opinion appears to involve the first question. According to the majority, Special Agent Bauch's request for consent to search Bibbins' truck did not extend the original traffic stop. I strongly disagree.

As we found in *State v. Gibbons*, a case in which three members of the current majority joined, and the author of the current majority dissented, "[a]n officer who questions and detains a suspect for reasons other than those connected with the original purpose of the stop exceeds the scope of permissible investigation unless he has 'reasonable suspicion' of other criminal activity."[52] *Gibbons* is not alone in this pronouncement. We adhered to such principle before *Gibbons*, and we have followed it since.[53]

---

[49] (Citations and punctuation omitted; emphasis supplied.) Id. See also *Gonzales v. State*, 255 Ga. App. 149, 150 (564 SE2d 552) (2002) ("Once a routine traffic stop has ended, an officer must have either valid consent or reasonable suspicion of criminal conduct before conducting additional questioning and searching a vehicle.").

[50] See *Daniel*, supra at 846 (3); *Buck*, supra.

[51] (Citation omitted.) *Daniel*, supra at 846-847.

[52] *Gibbons*, supra at 863 (2).

[53] See, e.g., *Habib*, supra at 230-231 (1) (officer impermissibly expanded scope of traffic stop for seat belt violation when he launched into a drug investigation and requested consent to search car without reasonable articulable suspicion); *Almond v. State*, 242 Ga. App. 650, 652 (530 SE2d 750) (2000) ("If during an investigatory stop the officer, without an articulable suspicion, proceeds to ask questions unrelated to the reason for the stop, the officer goes beyond the permissible scope of the investigation, and the further detention of the car driver exceeds that permitted by *Terry v. Ohio*[, 392 U. S. 1 (88 SC 1868, 20 LE2d 889) (1968)] and its progeny.") (footnote omitted); *Migliore v. State of Ga.*, 240 Ga. App. 783, 784 (525 SE2d 166) (1999) (" '[A]n

The record shows that when Bauch asked Bibbins for consent to search his truck, Bauch had already obtained the information from Bibbins' license, had checked the information on the police computer, and had found "no problems." But, instead of writing a ticket for the lane violation, otherwise continuing the traffic investigation, or returning the license, Bauch launched into an unrelated drug probe, without any *objective* basis at that time, and sought consent to search. I fail to see how such inquiry falls within the permissible scope of a lane-violation traffic stop under the language in *Gibbons*.

Moreover, I can find no reasonable distinction between this situation and several of our prior decisions. In *Habib v. State*,[54] for example, an officer stopped a car for a seat belt violation. While speaking with the car occupants, he noticed that both the driver and passenger had dry mouths, which the officer believed to be consistent with marijuana use. The officer obtained permission to search the passenger, and the search revealed the odor of marijuana. The passenger admitted to smoking marijuana the previous day, and the officer at that point " 'felt like' both men had been smoking."[55] The officer then obtained consent to search the driver, which produced no contraband, and consent to search the car, which revealed marijuana in the back seat. During this encounter, the two men were not free to leave, and the officer held the driver's license.

The trial court granted the driver's motion to suppress, determining that the officer lacked articulable reasonable suspicion to expand the traffic stop and launch a drug probe. It concluded that the officer proceeded on a " 'mere hunch' " based on the car occupants' dry mouths. We affirmed the trial court's decision, finding that the officer impermissibly exceeded the scope of the stop by conducting a drug investigation without reasonable suspicion.[56]

Similarly, in *Smith v. State*,[57] an officer stopped a motorist for a suspected drunk driving violation. The officer questioned the driver about his manner of driving, but the driver had no odor of alcohol on his breath, and the officer did not administer any field sobriety tests. Instead, the officer requested consent to search the driver's truck. When the driver refused, the officer asked whether the driver had

---

officer who questions and detains a suspect for other reasons exceeds the scope of permissible investigation unless he has "reasonable suspicion" of other criminal activity.' "); *State v. Blair*, 239 Ga. App. 340, 341 (521 SE2d 380) (1999) (same); *Smith*, supra at 455 (2) (officer exceeded permissible scope of DUI traffic stop when he "probed into [the defendant's] possession of contraband, specifically narcotics," and requested permission to search the defendant's vehicle).

[54] Supra.

[55] Id. at 230.

[56] See id. at 230-231.

[57] Supra.

narcotics in the vehicle. Although the driver denied having such contraband, the officer continued to detain him and asked a police dispatcher to send a drug dog to the scene. While waiting for the drug dog, the officer noticed a plastic bag in the driver's mouth. The bag, which the driver spat out at the officer's request, contained marijuana.

The trial court denied the driver's motion to suppress, and we reversed.[58] We concluded that, without reasonable articulable suspicion, the officer asked the driver questions "that did not relate to his suspicion that [the driver] was driving under the influence and that did not relate to any traffic violations, but instead probed into [the driver's] possession of contraband, specifically narcotics, and culminated in the officer's request to search [the] truck."[59] We found that such probe illegally exceeded the permissible scope of a DUI investigation.[60] Thus, because the officer discovered the marijuana during an illegal detention, it should have been suppressed.[61]

Under established Georgia precedent, Special Agent Bauch exceeded the permissible limits of the initial traffic stop when he delayed the conclusion of that stop, commenced an unrelated drug inquiry, and asked consent to search Bibbins' car.[62] To find otherwise effectively overrules extensive case law.[63]

In its opinion, the majority asserts that Bauch's request for consent to search did not unreasonably prolong — and thus did not impermissibly extend — the traffic stop. In several recent cases, we have indicated that "only unrelated questions which unreasonably prolong the detention are unlawful."[64] I question whether such language properly follows the mandate that an investigative stop last no longer than necessary *and* have a scope carefully tailored to its underlying justification.[65] Clearly, scope and duration are not synonymous. And I cannot agree with the majority's suggestion that a drug inquiry conducted during a routine traffic stop in which the officer has found "no problems" somehow relates to issues of traffic safety and enforcement.[66]

---

[58] Id. at 455.

[59] Id.

[60] See id.

[61] See id.

[62] See, e.g., *Habib*, supra; *Gibbons*, supra at 863-864; *Migliore*, supra; *Smith*, supra.

[63] See footnote 43, supra.

[64] (Punctuation omitted.) *Evans v. State*, 262 Ga. App. 712, 715 (1) (a) (586 SE2d 400) (2003). See also *Henderson v. State*, 250 Ga. App. 278, 280 (551 SE2d 400) (2001) (physical precedent only).

[65] See *Daniel*, supra at 841 (citing *Florida v. Royer*, 460 U. S. 491, 500 (103 SC 1319, 75 LE2d 229) (1983) (plurality opinion)).

[66] The majority cites several cases for the proposition that a drug-related inquiry during a

Regardless, however, the record here shows that Bauch's unrelated drug inquiry did, in fact, unreasonably prolong the detention. At the time Bauch requested consent to search, he had completed his traffic investigation. But, rather than writing Bibbins a ticket, returning his license, or otherwise releasing him, Bauch abandoned the purpose of the stop and conducted a fishing expedition for drugs.

This is not a situation in which an officer asked for consent to search while writing a traffic ticket, thus obtaining consent without prolonging the detention.[67] On the contrary, Bauch's actions unreasonably delayed the progression and conclusion of the stop.[68] *Regardless of the delay's length, it extended the detention beyond that necessary to effectuate the stop's purpose.*[69] This is the simple and single moment of analytical significance. Even the majority's author has noted previously that a prolonged detention results when "[an] officer — without an apparent valid purpose since no investigation was being conducted into the traffic violation authorizing the stop — retained the detainee's identification materials."[70]

Although the State bears the burden of proof,[71] it presented no

---

traffic stop "is reasonably related to legitimate highway public safety concerns 'in light of the problem of interstate drug traffic.'" See *State v. Hall*, 235 Ga. App. 412, 415 (509 SE2d 701) (1998); *Kan v. State*, 199 Ga. App. 170, 171 (404 SE2d 281) (1991); *O'Keefe v. State*, 189 Ga. App. 519, 520 (376 SE2d 406) (1988). I find nothing in the cited cases, however, that draws a link between a drug investigation and traffic safety. Similarly, although the majority asserts that the United States Supreme Court has "recognized the authority of an officer to ask a drug-related question during the course of a traffic stop," the cases it relies upon do not approve or even address the legality of such questioning. See *Ohio v. Robinette*, 519 U. S. 33 (117 SC 417, 136 LE2d 347) (1996); *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979).

[67] Compare *Evans*, supra at 715-716 (evidence supported trial court's conclusion that drug-related questioning and request for consent to search car did not unreasonably prolong traffic stop where there was no undue delay between initial stop and issuance of traffic ticket and record showed that officer requested consent to search while writing ticket); *Henderson*, supra at 281 (police request for consent to search car for weapons and drugs did not impermissibly expand traffic stop where officers asked for consent while writing traffic ticket).

[68] See *Gibbons*, supra at 868 (Ruffin, J., concurring specially) (officer cannot delay issuance of a traffic citation in order to conduct fishing expedition for evidence of other criminal activity); *State v. Johnson*, 209 Ga. App. 84, 86 (432 SE2d 580) (1993) (" 'In assessing the effect of the length of the detention, it must be determined whether the police diligently pursued their investigation.' ").

[69] See *Daniel*, supra at 841.

[70] *Evans*, supra at 716.

[71] See *State v. Taylor*, 226 Ga. App. 690, 692 (487 SE2d 454) (1997). I cannot countenance the majority's effort to shift the evidentiary burden here to Bibbins. The only cases cited to support its proposition that Bibbins bore the "evidentiary burden" of showing a subsequent illegality relate to searches pursuant to a search warrant. In *Davis v. State*, 266 Ga. 212, 212-213 (465 SE2d 438) (1996), and *State v. Slaughter*, 252 Ga. 435, 439 (315 SE2d 865) (1984), the Supreme Court found that, when a defendant challenges a search warrant on a basis other than the three statutory grounds listed in OCGA § 17-5-30 (a) (2), the State meets its evidentiary burden by producing the warrant and its supporting affidavit. The evidentiary burden then shifts to the defendant to show that the warrant was invalid. See *Davis*, supra; *Slaughter*, supra. Nothing in *Davis* or *Slaughter*, however, supports such burden shifting in a case that

evidence that Bauch's request fell within the traffic stop's permissible limits. In fact, the record shows the opposite. Accordingly, I find that Bauch extended the original traffic stop.[72]

2. The question thus becomes whether this prolonged encounter was constitutionally permissible. The State does not claim that Bauch had reasonable articulable suspicion to extend the stop. Instead, it contends that the stop became a consensual encounter during which Bibbins agreed to additional questioning, as well as the search of his truck. We must consider, therefore, whether the initial detention de-escalated into a consensual police-citizen encounter not implicating the Fourth Amendment.[73]

A consensual police-citizen encounter "has been defined as simply the voluntary cooperation of a private citizen in response to non-coercive questioning by a law enforcement official."[74] And an encounter constitutes "voluntary cooperation" if, given all of the surrounding circumstances, a reasonable person would have believed that he was free to leave.[75] In other words, no seizure occurs as long as a citizen feels free to disregard an officer's questions and walk away.[76]

Although distinguishing a consensual encounter from a seizure is " 'necessarily imprecise,' "[77] our Supreme Court has found that " 'an encounter initiated by a traffic stop may not be deemed consensual unless the driver's documents have been returned to him.' "[78] We have similarly concluded that no reasonable person would feel free to leave a traffic stop before receiving his or her copy of the traffic citation.[79]

The record shows that Special Agent Bauch sought and obtained the alleged consent *before* returning Bibbins' license or writing Bibbins a traffic citation. As a matter of law, therefore, Bibbins was not free to leave, and the traffic stop had not become a consensual encounter. Consequently, the continued detention, which extended

---

does not involve a search warrant. In fact, the *Slaughter* Court noted that "[b]ecause the burden is on those officers who conduct a search without a warrant to show that the search was conducted pursuant to an exception to the Fourth Amendment ([cit.]) warrant requirement, it can be said that a search without a warrant is presumed to be invalid and the burden is on the state to show that the warrantless search was valid." *Slaughter*, supra at 436. Searches conducted pursuant to a warrant, on the other hand, are presumed valid. Id. at 437.

[72] See *Habib*, supra; *Gibbons*, supra at 863-864; *Migliore*, supra; *Smith*, supra.

[73] See *Daniel*, supra at 842 (2).

[74] (Punctuation omitted.) Id.

[75] See id.

[76] See id.

[77] Id.

[78] Id. at 843 (2) (a).

[79] See *Faulkner v. State*, 256 Ga. App. 129, 130 (567 SE2d 754) (2002). See also *Daniel*, supra at 844 (citing *Faulkner*).

the traffic stop without reasonable suspicion, was illegal.[80]

3. The final relevant question involves the validity of Bibbins' alleged consent. As found by the Supreme Court, "[e]ven where the driver and vehicle occupants have been illegally detained, the driver or owner of the vehicle may nonetheless voluntarily consent to a search of the vehicle."[81] Once again, the State bears the burden of proving such consent to be voluntary, and this burden is particularly heavy when the consent follows an illegal detention.[82] Furthermore, if

> an individual is illegally seized, searched or arrested, any consent obtained thereafter must be analyzed to determine both whether the consent was given voluntarily (under the totality of the circumstances test) and whether that consent was sufficiently attenuated from the unlawful seizure so that it was not the product thereof.[83]

The trial court did not specifically address the issue of consent. But even if Bibbins voluntarily agreed to the vehicle search, I believe that, as a matter of law, the illegal detention tainted the consent because the record reflects that the *purpose* of the continued detention was to request such consent. Under similar circumstances, we have held consent to search to be a product of the illegal detention in violation of the Fourth Amendment.[84] Precedent controls and takes note of similarities as well as sameness.

4. Having applied the analytical framework set forth in *Daniel*, I conclude that the trial court properly granted Bibbins' motion to suppress. The State cannot establish that Bibbins validly consented to the search of his truck. The majority's effort to find otherwise eviscerates significant case law and undercuts the Fourth Amendment. As a result, the bench, bar, and law enforcement personnel are left without guidance as to what officers can and cannot do during a traffic stop, a condition which the majority claims to correct.

---

[80] See *Daniel*, supra at 841. As noted by the majority, the Supreme Court determined in *Daniel* that, under the facts of that case, the officer obtained consent to search after the valid traffic stop had concluded and the post-stop contact had evolved into a consensual encounter. See id. at 849 (5). Citing this distinction, the majority argues that the *Daniel* analysis does not apply here. I disagree. Although the factual circumstances in *Daniel* produced a different outcome, the Supreme Court's analytical framework is certainly applicable in this case. And under that framework, Bibbins allegedly consented to the search at a time when he was illegally detained.

[81] Id. at 846.

[82] See id.

[83] (Citations omitted.) Id. at 846-847.

[84] See *Faulkner*, supra at 131; *Gonzales*, supra at 150-151.

I note that, under *Daniel*, Bauch could have obtained valid consent by allowing the stop to de-escalate into a consensual police-citizen encounter and *then* obtaining consent. But Bauch did not do so. Instead, he illegally extended a traffic stop, violating Bibbins' Fourth Amendment right to be free of unreasonable searches and seizures. Accordingly, I respectfully dissent.[85]

I am authorized to state that Judge Adams joins in this dissent.

ADAMS, Judge, dissenting.

I concur fully in Presiding Judge Ruffin's dissent but write separately to note that (1) there is a split in the federal circuits regarding the main question presented; (2) federal circuit court opinions on this matter are not controlling on this Court; (3) the United States Supreme Court has limited the scope of permissible investigation in the related area of roadblock cases, to not include ordinary criminal wrongdoing such as illegal drug activities; (4) the result suggested by the dissents is not anomalous; and (5) the posture of this case on appeal and the record before us raises questions.

1. The primary question debated in this case is whether an officer may, during the course of a traffic stop, question the driver and request consent to search, on a subject unrelated to the purpose of the stop, without articulable suspicion of other illegal activity, such as drugs. The majority relies in part on the Eleventh Circuit case of *United States v. Purcell*, 236 F3d 1274, 1279-1280 (11th Cir. 2001), for the proposition that the only constitutional concern raised by such questioning is "not the content of the questions, but their impact on the duration of the stop." What the majority fails to note is that the Eleventh Circuit's comments that it recites were only meant to describe the Fifth Circuit's reasoning on the matter. In fact, in *Purcell* the Eleventh Circuit did not establish or adopt any particular guideline or test to determine when the scope of the stop has been exceeded. Id. Instead, the Eleventh Circuit Court simply "recognized that there are two possible tests for when a police investigation exceeds the scope of a routine traffic stop." *United States v. Boyce*, 351 F3d 1102, 1111 (11th Cir. 2003). Indeed, the federal circuits are split on this very question.

The Eighth, Ninth, and Tenth Circuit Courts have held that an officer may not ask questions during a traffic stop that are unrelated

---

[85] According to the majority, my dissent hinges on the mistaken conclusion that Bauch's search request itself turned an otherwise valid traffic stop into an illegal detention. This is an oversimplification of the issue. My point is not simply that the request rendered the stop illegal, *but that it impermissibly exceeded the limits of the initial, valid traffic stop, raising Fourth Amendment concerns.*

to the purpose of the original stop, even if the questioning does not extend the stop, unless the officer has reasonable suspicion of illegal activity.[86] The Fifth, Sixth, and Seventh Circuit Courts generally agree that such questioning is allowed so long as the unrelated questioning does not unreasonably lengthen the traffic stop.[87] So, the issue is far from settled in the federal courts.

2. Moreover, a federal circuit court's opinion on this issue is not binding on this Court, but merely persuasive authority.[88]

3. The majority also appears to reason that questions about drug trafficking on our nation's roads are properly within the legitimate scope of all traffic stops. But as shown above, the federal circuit courts are split on this issue and the United States Supreme Court has not spoken.[89] Furthermore, in an instructive and possibly analogous case, the United States Supreme Court has held that roadblock/checkpoints contravene the Fourth Amendment if they are established for the primary purpose of detecting evidence of ordinary criminal wrong-doing, such as illegal drug activities. *City of Indianapolis v. Edmond,*

---

[86] See *United States v. Ramos*, 42 F3d 1160 (8th Cir. 1994) (officer may only ask questions that are not related to the traffic stop if he has additional suspicion that would allow him to expand the scope of inquiry); *United States v. Murillo*, 255 F3d 1169, 1174 (9th Cir. 2001) (holding that questions posed by officers require either some relation to the basis for the custody or an independent source of reasonable suspicion); *United States v. Holt*, 264 F3d 1215, 1227 (10th Cir. 2001) (en banc) (both the length and scope of a traffic stop are relevant factors in deciding whether the stop comports with the Fourth Amendment). Compare *Oliver v. United States*, 363 F3d 1061 (10th Cir. 2004) (panel decision issued subsequent to *Holt*, supra); *United States v. Edward J.*, 224 F3d 1216, 1220 (10th Cir. 2000) (only an en banc panel may overrule a prior panel's decision).

[87] See, e.g., *United States v. Shabazz*, 993 F2d 431, 437 (5th Cir. 1993) (approving unrelated questions about travel plans where officer was waiting for results of computer check when he asked the questions); *United States v. Palomino*, 100 F3d 446, 449-450 (6th Cir. 1996) (suggesting that no constitutional violation occurred because drug questioning did not extend stop longer than was necessary for the original purpose of the stop); *United States v. Childs*, 277 F3d 947 (7th Cir. 2002) (officer's drug-related question did not turn reasonable detention into unreasonable detention where the question was asked while the driver was being processed and passenger could have protected himself by declining to answer).

[88] *Arizonians for Official English v. Arizona*, 520 U. S. 43, 58 (117 SC 1055, 137 LE2d 170) (1997) (supremacy clause does not require state courts to yield to a federal appellate court's interpretation on a question of federal law); *Macon-Bibb County Hosp. Auth. v. Nat. Treasury Employees Union*, 265 Ga. 557, 558 (458 SE2d 95) (1995) (decisions of federal courts of appeal are not binding on this Court, but their reasoning is persuasive).

[89] In support of its position, the majority cites United States Supreme Court cases that involve fact patterns that include drug-related questions during traffic stops. But none of these cases addresses directly the question of the scope of permissible questioning. See *Ohio v. Robinette*, 519 U. S. 33 (117 SC 417, 136 LE2d 347) (1996); *Delaware v. Prouse*, 440 U. S. 648 (99 SC 1391, 59 LE2d 660) (1979); *Schneckloth v. Bustamonte*, 412 U. S. 218 (93 SC 2041, 36 LE2d 854) (1973). As stated by the Tenth Circuit Court, "[a]lthough the [United States Supreme] Court has not directly addressed the issue we now face, it has, in applying the *Terry* analysis, routinely employed language indicating there are limitations on both the length of the detention and the manner in which it is carried out (what I refer to here as the 'scope' or 'breadth' of the detention)." *United States v. Holt*, 264 F3d at 1229.

531 U. S. 32, 41-42 (III) (121 SC 447, 148 LE2d 333) (2000).[90] In other words, roadblocks, which may be established "to serve purposes closely related to the problems of policing the border or the necessity of ensuring roadway safety," may not be established with the primary purpose of drug interdiction (although illegal drug activities may be investigated if articulable suspicion develops). Id. The United States Supreme Court has therefore recognized that, at least in the road-block setting, drug interdiction is beyond the scope of roadway-safety-traffic-law enforcement, which, as noted by the majority, is already broadly defined to include computerized checks of license, insurance, registration, VIN, and identification.

4. The majority contends that a restriction during a traffic stop on an officer's ability to request consent to search for drugs produces an anomalous result. The majority relies heavily on the idea that police questioning, in and of itself, does not constitute a seizure for Fourth Amendment purposes, see *Florida v. Bostick*, 501 U. S. 429, 434 (111 SC 2382, 115 LE2d 389) (1991), and on the argument that what is allowed at a first-tier stop cannot be improper at a second-tier stop.

But, as our own Court has noted, at a first-tier stop officers may "ask for identification, and freely question the citizen without any basis or belief that the citizen is involved in criminal activity, *as long as the officers do not detain the citizen or create the impression that the citizen may not leave.*" (Citation and punctuation omitted; emphasis supplied.) *Akins v. State*, 266 Ga. App. 214, 215 (596 SE2d 719) (2004). This distinguishes a first-tier stop from a second-tier stop, which, as is well established, is a temporary detention that constitutes a seizure within the meaning of the Fourth Amendment. *Whren v. United States*, 517 U. S. 806, 809-810 (116 SC 1769, 135 LE2d 89) (1996). Similarly, as the United States Supreme Court has made clear, "[s]o long as a reasonable person would feel free to disregard the police and go about his business, the encounter is consensual and no reasonable suspicion is required." (Citations and punctuation omitted.) *Florida v. Bostick*, 501 U. S. at 434. In other words, although questioning alone is not a seizure, at a second-tier stop, the person is already seized. The tier system is based on the idea that more and more justification is required for police actions as the level of detention increases. Accordingly, it is not anomalous that during a traffic stop, police are required to have articulable suspicion to question a person about a nontraffic topic.

---

[90] Compare *Illinois v. Lidster*, 540 U. S. 419 (124 SC 885, 157 LE2d 843) (2004) (upholding traffic stop established for the specific purpose of obtaining information about a recent fatal hit-and-run accident; roadblock was not established for drug interdiction).

5. Finally, the posture of this case requires comment. At the hearing on the motion to suppress, the arresting officer was present in the courtroom but he did not testify, no other evidence was introduced, and the parties did not stipulate to any facts. Rather, the parties and the court simply discussed the legal issue. The trial court indicated that it was concerned about this area of law because it had recently learned how law enforcement officers were being trained in this area. The two counsel and the court then discussed what they perceived as conflicting lines of authority from the Court of Appeals regarding consent to search. Finally, the court made a suggestion:

> I can tell you what I can do. I can just make the decision and give y'all discretionary appeal and let you take it up there and straighten it out. . . .

Defense counsel suggested that the court rule in such a way so as to avoid having an interlocutory appeal. The court apparently agreed, and it decided to grant the motion to suppress so as to allow a direct appeal. Defense counsel commented, ". . . it's an adversarial system but we're together wanting to know what the answers are type thing [sic]."

On appeal, the only "stipulation" of facts before this Court is an attachment to both the State's and the defense's brief in which both counsel agree that the "Statement of Facts" section of their briefs shall constitute the "facts that would be adduced at trial." This Court may not consider documents attached to appellate briefs. *High Voltage Vending v. Odom*, 266 Ga. App. 537, 538 (597 SE2d 428) (2004). "Nevertheless, where 'facts . . . necessary for disposition are stated in a brief, and the State concedes such statement is substantially correct, we are permitted to reach a decision upon the agreed upon facts.'" (Citation and punctuation omitted.) *Williams v. State*, 253 Ga. App. 10 (557 SE2d 473) (2001). Oddly, however, the one thing that is not stipulated is what the defendant said in response to the question of whether he would agree to a search. The parties agree that Bibbins's answer to the request for consent to search is inaudible on the video tape. Ultimately, Bibbins's answer proved irrelevant based on the law in *Daniel v. State*, 277 Ga. 840 (2) (a) (597 SE2d 116) (2004).

We caution the bench and bar that appeals may not be manufactured by the parties. The trial court should give full consideration of the merits of issues raised below based on the law and the facts as presented to it. It makes this Court's job much more tedious and difficult if it is required to sort out questions of whether proper procedure has been followed.

Decided December 1, 2004 —
Reconsideration denied December 16, 2004 — 

*William T. McBroom, District Attorney, Thomas J. Ison, Jr., Assistant District Attorney*, for appellant.

*Virgil L. Brown & Associates, Virgil L. Brown, Eric D. Hearn, Ronald J. Ellington*, for appellee.